CARMEN M. GONZÁLEZ NATAL ET AL., demandantes y apelantes, *v.* MERCK SHARP & DOHME QUÍMICA DE PUERTO RICO, INC. y/o MERCK SHARP & DOHME QUÍMICA ARECIBO, INC., demandados, X, Y y Z, demandados y apelados.

*Número:* AC-2001-66      *Resuelto:* 5 de enero de 2006

*Ana R. Mellado González* y *Víctor M. Bermúdez Pérez*, abogados de la parte apelante; *Francisco Colón Conde* y *Juan J. Casillas*, abogados de la parte apelada.

El Juez Asociado Señor Rebollo López emitió la opinión del Tribunal.

En *diciembre de 1996* un grupo de empleados de Merck Sharp & Dohme (Merck) presentaron ante el Tribunal de Primera Instancia, Sala Superior de Arecibo, una demanda en la que reclamaron el pago de horas y días de trabajo no compensados.[1] Solicitaron, además, que se certificara el pleito como un pleito de clase en vista de la numerosa cantidad de demandantes involucrados. El foro de instancia denegó la solicitud de certificación de pleito de clase. De esta determinación los demandantes acudieron en alzada al Tribunal de Circuito de Apelaciones, el cual *confirmó* la denegatoria del foro primario. Insatisfechos, comparecieron ante este Tribunal —vía *certiorari*— y *mediante Resolución de 25 de agosto de 1998, notificada el 28 de agosto del mismo año, declaramos "no ha lugar" el referido recurso.*

*Luego de transcurrido casi un año desde que se denegó la solicitud de certificación del pleito como de clase, el 28 de julio de 1999 se presentó ante el Tribunal de Primera Instancia, Sala Superior de Arecibo, la demanda que origina el caso de autos.* En ésta comparecieron ochenta y seis demandantes y, posteriormente, se enmendó la demanda para incluir a otros quince.[2] Mediante esta reclamación, varios empleados y ex empleados de Merck solicitaron el pago de salarios alegadamente debidos y no pagados durante los últimos diez años, a saber, en concepto de trabajo realizado durante horas extras, durante el período de to-

---

[1] Dicho pleito corresponde al Caso Civil Núm. CPE97-0002, *Ángel L. Serrano Galán, et al. v. Merck Sharp & Dohme, Inc., et al.*

[2] Estos eran los demandantes que se pretendía que fueran representados a través del pleito de clase.

mar alimentos, durante el séptimo día de descanso y en concepto de vacaciones adeudadas.

Después de contestar la demanda, Merck presentó una moción de *desestimación parcial* de aquellas reclamaciones que se referían a salarios correspondientes a períodos anteriores al 28 de julio de 1996. Adujo que de las alegaciones de la demanda surgía que a la fecha de su presentación, 28 de julio de 1999, ya estaban en vigor las disposiciones del Art. 12 de la Ley Núm. 180 de 27 de julio de 1998, según enmendada, 29 L.P.R.A. sec. 250j, *y que, por lo tanto, el remedio solicitado debía limitarse a los salarios debidos y no pagados durante los últimos tres años anteriores a la fecha en que se presentó la reclamación judicial.*[3] En vista de ello, argumentó que la reclamación de salarios por períodos anteriores al 28 de julio de 1996 debía ser desestimada como cuestión de derecho.

---

[3] Para la fecha en que el presente pleito fue instado, el referido Art. 12 de la Ley Núm. 180 de 27 de julio de 1998 disponía lo siguiente:

"(a) *Por el transcurso de dos (2) años prescribirá la acción en reclamación de salarios que pueda tener un empleado contra su patrono al amparo de este capítulo o cualquier decreto mandatorio,* ya aprobado o que se apruebe, de acuerdo con las disposiciones de este capítulo o al amparo de cualquier contrato o ley. *Para la prescripción de esta acción, el tiempo se contará desde que el empleado cesó su empleo con el patrono.* El término de prescripción antes indicado se interrumpirá y comenzará a transcurrir de nuevo por la notificación de la deuda de salario al patrono, judicial o extrajudicialmente, por el obrero, su representante, o funcionario del Departamento con facultad para ello y por cualquier acto de reconocimiento de la deuda por el patrono.

"(b) Cuando el empleado estuviere trabajando con el patrono, *la reclamación solamente incluirá los salarios a que tuviese derecho el empleado, por cualquier concepto, durante los últimos tres (3) años anteriores a la fecha en que se estableciese la acción judicial.*

"(c) En el caso de que el empleado hubiese cesado en su empleo con el patrono, *la reclamación solamente incluirá los últimos tres (3) años anteriores a la fecha de su cesantía.*

"(d) En relación con el término prescriptivo provisto en esta sección, un cambio en la naturaleza de las labores del empleado no constituirá una novación del contrato de empleo.

"(e) *Lo dispuesto en esta sección en nada afectará* los casos ya radicados en los tribunales, *o que se radiquen dentro de un año después de entrar en vigor este capítulo.*" (Énfasis suplido.) 29 L.P.R.A. sec. 250j (Sup. 1999).

Por su parte, el Art. 18 de dicha pieza legislativa dispone que "[e]sta Ley comenzará a regir inmediatamente después de su aprobación". 1998 Leyes de Puerto Rico 706.

Los demandantes se opusieron a dicha moción y alegaron, en síntesis, que como el 27 de julio de 1999 era día feriado, la Regla 68.1 de Procedimiento Civil, 32 L.P.R.A. Ap. III, permitía prorrogar el "término en cuestión" establecido en el Art. 12 de la Ley Núm. 180, ante, 29 L.P.R.A. sec. 250j(e), hasta el próximo día laborable, esto es, al 28 de julio de 1999, fecha cuando se presentó la demanda. Alegan que por ello tienen derecho a reclamar los salarios de los últimos diez años, ya que aún estaba vigente la legislación anterior. En la alternativa, argumentan que el pleito instado en diciembre de 1996 interrumpió el término prescriptivo para instar las reclamaciones de salarios "para todas las personas que pudieran haber reclamado, irrespectivamente de que se hubier[e] o no certificado la clase en dicho caso".

Tras varios trámites procesales, el Tribunal de Primera Instancia, mediante Resolución de 1 de mayo de 2001, declaró "con lugar" la moción de desestimación parcial presentada por la parte demandada para determinar que la reclamación de los demandantes se limitaba a los tres años anteriores a la presentación del pleito.

Al así resolver, manifestó el foro de instancia que al denegarse la certificación de clase por parte de este Tribunal el 25 de agosto de 1998, se extendió hasta agosto de 2000 el término prescriptivo de dos años[4] que establece el Art. 12 de la Ley Núm. 180, ante, para presentar la reclamación de salarios; ello en vista de que la presentación del pleito en diciembre de 1996 interrumpió el término para instar la referida acción. *No obstante, indicó que si bien el término para instar la reclamación se extendió, no ocurrió lo mismo con relación al término en el cual tenían que demandar*

---

[4] Es menester señalar que la Ley Núm. 80 de 21 de mayo de 2000 introdujo una enmienda al Art. 12(a) de la Ley Núm. 180, ante, que tuvo el efecto de cambiar de dos a tres años el término prescriptivo para instar la reclamación de salarios.

*para beneficiarse del remedio de reclamar los salarios de
los últimos diez años.*

Manifestó, además, dicho foro judicial que a pesar de
que la Ley Núm. 180, ante, dispuso que regiría inmediata-
mente, el inciso (e) del Art. 12 (29 L.P.R.A. sec. 250j(e)) hizo
una salvedad para que los términos establecidos en dicha
disposición estatutaria no cobraran efecto hasta que trans-
curriera un año desde que la ley entró en vigor. Sostuvo
que el inciso (e) no estableció un término prescriptivo como
arguyen los demandantes, sino que pospuso la vigencia del
Art. 12 por un año adicional. Dictaminó que, no refirién-
dose dicho artículo a un término prescriptivo, sino a un
término de vigencia de una disposición legal, la Regla 68.1
de Procedimiento Civil, ante, no le aplicaba; ello en vista
de que no es posible extender el término de vigencia de una
ley por el simple hecho de que el día dispuesto por el legis-
lador para que el estatuto entrara en vigor coincidió con un
día festivo. De este modo, concluyó que el Art. 12 entró en
vigor el 27 de julio de 1999 y que, habiendo los demandan-
tes instado su reclamación el 28 de julio de 1999, les apli-
caban las disposiciones de la Ley Núm. 180, ante, las cua-
les sólo permiten reclamar salarios de los últimos tres años
anteriores a la demanda.

Insatisfechos con dicho dictamen, el 11 de junio de 2001
los demandantes acudieron —vía *certiorari*— ante el Tri-
bunal de Circuito de Apelaciones.[5] Merck, por su parte, se
opuso al referido recurso. Mediante Resolución de 31 de
octubre, archivada en autos el 4 de noviembre de 2001,
dicho foro judicial *denegó* la expedición del recurso
solicitado.

Al así resolver, el foro apelativo intermedio señaló que el
citado inciso (e) no estableció un término prescriptivo, sino

---

[5] En síntesis, los demandantes alegaron que el foro primario había errado: (i)
al haber limitado la reclamación de los demandantes a los salarios de los últimos tres
años anteriores a la demanda, y (ii) al no haber concluido que el pleito de clase
instado en diciembre de 1996 tuvo el efecto de interrumpir el término prescriptivo
aplicable.

un término que pospuso la vigencia del Art. 12 por un año. Dicho foro interpretó que durante ese año los empleados no perdieron su derecho a reclamar salarios, sino que tan sólo se modificó el estado de derecho, estableciéndose uno nuevo que limitó la reclamación a los salarios de los últimos tres años. Sostuvo, además, que una ley puede comenzar a regir en un día feriado y que no aplicaba la Regla 68.1 de Procedimiento Civil, ante, ya que dicha regla procesal no aplicaba a la fecha de vigencia de una disposición legal. Dispuso que la Ley Núm. 180, ante, entró en vigor el 27 de julio de 1998 y, luego de un año a partir de dicha fecha, entró en vigor el Art. 12 de la referida ley. En vista de lo anterior, concluyó que habiéndose presentado la acción el 28 de julio de 1999, la reclamación de salarios de los empleados debía limitarse a los últimos tres años anteriores, ello independientemente de que el 27 de julio de 1999 coincidiera con un día festivo.

Inconformes con la actuación del tribunal apelativo intermedio, los demandantes acudieron ante este Tribunal mediante un recurso de apelación. Alegan que procede revocar la sentencia emitida por el tribunal apelativo debido a que dicho foro incidió

> ... al confirmar una Resolución emitida por el Honorable Tribunal de Primera Instancia, en la cual desestimó con perjuicio toda reclamación contenida en la demanda radicada en el caso de autos anterior al 28 de julio de 1996.
> ... al no considerar el error planteado por la parte demandante en cuanto a la determinación del Honorable Tribunal de Primera Instancia a los efectos de que el pleito de clase presentado en el caso civil número CPE97-0002 radicado previamente ante dicho foro, no tuvo el efecto de interrumpir el término prescriptivo aplicable.

Considerado el recurso presentado como un *certiorari, expedimos.* Contando con la comparecencia de ambas partes y estando en posición de resolver el recurso presentado, procedemos a así hacerlo. *Confirmamos.* Veamos por qué.

I

■ Como es de conocimiento general, el salario mínimo es un derecho consagrado en el Art. II, Sec. 16 de la Constitución del Estado Libre Asociado de Puerto Rico, L.P.R.A., Tomo 1, para todos los trabajadores que se desempeñan en calidad de empleados. A. Acevedo Colom, *Legislación protectora del trabajo comentada*, 7ma ed. rev., San Juan, [s. Ed.], 2001, pág. 37. A esos efectos, la referida disposición constitucional reconoce el derecho de todo trabajador a un salario mínimo razonable y a recibir igual paga por igual trabajo. Íd. Del mismo modo, el salario mínimo en Puerto Rico está regulado por la Ley Federal de Normas Razonables de Trabajo[6] y por la ley, hoy en controversia, conocida como la Ley de Salario Mínimo, Vacaciones y Licencia por Enfermedad de Puerto Rico, Ley Núm. 180, ante, según enmendada, 29 L.P.R.A. sec. 250 *et seq.*

La Ley Núm. 180, ante, es producto de una larga secuela de leyes cuyo origen se remonta a 1941, cuando se aprobó en Puerto Rico la primera ley sobre el salario mínimo. El estatuto se caracterizó por su lento y complicado mecanismo para elevar el salario de los trabajadores. Por tal razón, en 1956 dicha ley fue derogada y sustituida por la Ley Núm. 96 de 26 de junio, mejor conocida como la Ley de Salario Mínimo de Puerto Rico. Véase Exposición de Motivos de la Ley Núm. 180, ante, 1998 Leyes de Puerto Rico 693. Esta pieza legislativa fue aprobada con el propósito de crear una ley más ágil y flexible que estuviese de acuerdo con los cambios económicos y sociales en el área laboral de aquel momento. Véase Exposición de Motivos de la Ley Núm. 96, ante, 1956 Leyes de Puerto Rico 625–627. De igual modo, esta ley sufrió varias enmiendas dirigidas a atemperarla a los nuevos desarrollos que transformaban la economía industrial en una economía tecnológica, comer-

---

[6] Véase *Fair Labor Standards Act of 1938* (29 U.S.C.A. sec. 201 *et seq.*).

cial y de servicios. Véase Exposición de Motivos de la Ley Núm. 180, ante, pág. 693.

Así, luego de cuarenta y dos años, la anterior legislación quedó derogada por la nueva Ley de Salario Mínimo, Vacaciones y Licencia por Enfermedad de Puerto Rico, Ley Núm. 180, ante, en la que se estableció un mecanismo más ágil, cónsono con el desarrollo en el campo laboral, tanto a nivel estatal como federal. Íd. Ésta tuvo la intención de atemperar la ley de salario mínimo local con la Ley Federal de Normas Razonables de Trabajo. Véase Exposición de Motivos de la Ley Núm. 80 de 21 de mayo de 2000, Leyes de Puerto Rico, pág. 666. Se estableció que el salario mínimo para aquellas empresas que estaban cubiertas por la legislación federal sería el salario mínimo federal. Por otro lado, para los trabajadores de empresas que no estuvieran cubiertas por la ley federal, se les proveyó un mecanismo más ágil para proteger su derecho a un salario mínimo razonable. Además, se regularon de manera uniforme las licencias de vacaciones y enfermedad para todos los trabajadores de Puerto Rico. Véase Exposición de Motivos de la Ley Núm. 180, ante, págs. 693–694.

Fueron varios los cambios que trajo esta nueva legislación, en reconocimiento de que "las *condiciones* del trabajador puertorriqueño ... *ha*[*bían*] *mejorado a través de los años*" y tomando en cuenta que "[l]a concesión de beneficios por encima del mandato estatutario, deb[ía] establecerse a tenor con la *realidad económica y las condiciones del mercado*". (Énfasis suplido.) Exposición de Motivos de la Ley Núm. 180, ante, pág. 693. Entre los cambios incorporados por la Ley Núm. 180, ante, se encuentran los términos establecidos en el citado Art. 12 y los remedios allí provistos. Dicho articulado enmendó la antigua Sec. 32 de la Ley Núm. 96, ante, la cual *disponía*, en lo pertinente, que:

(a) *Por el transcurso de tres años prescribirá la acción en re-*

*clamación de salarios que pueda tener un empleado contra su patrono* al amparo de esta ley ....

(b) Cuando el empleado estuviere trabajando con el patrono, la reclamación solamente incluirá *los salarios a que tuviere derecho el empleado, por cualquier concepto, durante los últimos diez años anteriores a la fecha en que estableciere la acción judicial.*

(c) En el caso de que el empleado hubiere cesado en su empleo con el patrono, *la reclamación solamente incluirá los últimos diez años anteriores a la fecha de la cesantía.*

.     .     .     .     .     .     .     .

(e) Lo dispuesto en esta Sección en nada afectará los casos ya radicados en los tribunales o que se radicaren dentro de un (1) año después de entrar en vigor esta ley. (Énfasis suplido.) 1956 Leyes de Puerto Rico 623, 685.

■   La Ley Núm. 180, ante, la cual entró en vigor el 27 de julio de 1998,([7]) tuvo el efecto *de enmendar* el inciso (a) de la antes citada Sec. 32 *para reducir de tres a dos años el término prescriptivo* para instar la reclamación de salarios. *Otro cambio significativo fue el efectuado en los incisos (b) y (c), en los que se limitó el remedio que los obreros tenían.* Se dispuso que éstos *sólo podrían reclamar los salarios correspondientes a los últimos tres años*, contados a partir de la fecha en que se instó la acción, tratándose de empleados que continúen trabajando para el patrono, o contados desde la fecha de la cesantía para aquellos que hubiesen cesado en su empleo con éste. Véase 29 L.P.R.A. sec. 250j. Recordaremos que de acuerdo con el estado de derecho de la ley anterior, se permitía reclamar los salarios de los últimos diez años.

■   Ahora bien, en el inciso (e) del Art. 12 de la Ley Núm. 180, ante, similar al inciso (e) de la ley anterior, se hizo una *salvedad* para que las disposiciones del referido artículo no se le aplicaran a todos aquellos casos que para la fecha de aprobación de la ley —esto es, para el 27 de julio de 1998— ya se hubiesen instado y para aquellos que

---

([7]) Como mencionáramos, en el Art. 18 de esta ley se estableció *que entraría en vigor inmediatamente.* 1998 Leyes de Puerto Rico 692, 706.

se presentaran dentro de un año después de que la ley entrara en vigor. Es decir, todo caso que para el *27 de julio de 1998* ya se hubiese instado, así como todo aquel que se incoara en o antes del *27 de julio de 1999*, quedaría *excluido de la aplicación* de las disposiciones del Art. 12 de la nueva ley, rigiéndose entonces por el ordenamiento anterior establecido por la Sec. 32 de la Ley Núm. 96, ante.

## II

La controversia que hoy tenemos ante nuestra consideración gira, precisamente, en torno al inciso (e) del Art. 12 de la Ley Núm. 180, ante. Cuando el legislador dispuso que "[l]o dispuesto en este Artículo en nada afectará los casos … que se radiquen dentro de un año después de entrar en vigor esta ley", *¿estableció un nuevo término prescriptivo para instar la reclamación de salarios, tal y como lo plantea la parte apelante, o, por el contrario, se refiere, según lo argüido por la parte apelada, a un término de vigencia diferido que tuvo el efecto de posponer por un año la vigencia del referido Art. 12?*

A. La disposición de ley cuya interpretación está en controversia dispone lo siguiente:

> (e) Lo dispuesto en est[e artículo] en nada afectará los casos ya radicados en los tribunales, o que se radiquen dentro de un año después de entrar en vigor est[a ley]. Art. 12(e) de la Ley Núm. 180, ante, 29 L.P.R.A. sec. 250j(e).

■ Si examinamos el texto claro y libre de ambigüedad de la referida disposición estatutaria, entendiéndolo en su más corriente y usual significación,[8] surge que mediante ésta la Legislatura *aplazó* por el término de un año

---

[8] Ello en virtud del Art. 15 del Código Civil de Puerto Rico, que exige que "[l]as palabras de una ley deben ser generalmente entendidas en su más corriente y usual significación, sin atender demasiado al rigor de las reglas gramaticales, sino al uso general y popular de las voces". 31 L.P.R.A. sec. 15.

*el momento* cuando las disposiciones del Art. 12, ante, comenzarían a tener efecto. De este modo, las disposiciones del referido artículo de ley cobraron efecto el 28 de julio de 1999; esto es, luego de transcurrido un año de que la Ley Núm. 180, ante, entrara en vigor. Entre dichas disposiciones se encuentra la que establece que el remedio disponible sólo podrá incluir la reclamación de salarios de los últimos tres años. Durante el periodo transcurrido entre el 27 de julio de 1998 —fecha cuando comenzó a regir la Ley Núm. 180, ante— y el 27 de julio de 1999, regiría lo establecido bajo la legislación anterior en lo que se refiere al Art. 12. Esto es, aquellos casos instados durante ese período podrían incluir en sus reclamaciones los salarios debidos y no pagados de los pasados diez años. De esta manera se creó un *período de gracia* para que la transición de una ley a otra, que a su vez disminuía en gran medida el remedio disponible, no se realizara "de golpe". De este modo, el legislador "avisó" a la ciudadanía que de presentarse un pleito fuera de esa fecha, ya no le cobijaría la ley anterior, sino el estado de derecho estatuido por la nueva legislación en su Art. 12.

No hay duda de que este tipo de disposición incluida en la Ley Núm. 180, ante, *trata de una disposición transitoria o de vigencia diferida denominada como un plazo "vacatio legis"*. M. Albaladejo, *Derecho Civil*, 11ma ed., Barcelona, Ed. Bosch, 1989, T. I, Vol. 1, págs. 196–197.[9] Se ha dicho que "[a]unque cabe que las leyes sean obligatorias desde el momento de su publicación ... la generalidad de los Códigos señala un plazo ... —llamado vacación de la ley (*vacatio legis*)— entre el momento de la publicación y el del comienzo de la vigencia de la ley". J. Castán Tobeñas, *Derecho Civil español común y foral*, 12ma ed. rev., Madrid, Ed. Reus, 1982, T. 1, Vol. 1, pág.

---

[9] Véanse, además: J. Castán Tobeñas, *Derecho Civil español común y foral*, 12ma ed. rev., Madrid, Ed. Reus, 1982, T. 1, Vol. 1, pág. 442; L. Díez-Picazo y A. Gullón, *Sistema de Derecho Civil*, 7ma ed., Madrid, Ed. Tecnos, 1989, Vol. I, pág. 123.

442. Estos plazos tienen el efecto de *posponer* la vigencia de una ley, o de alguna disposición de la ley, para que ésta no rija inmediatamente, sino que entre en vigor en un momento posterior. *Tienen como propósito "permitir el mejor conocimiento y preparación para [su] aplicación."* (Énfasis suplido.) Castán Tobeñas, *op. cit.*

■ Sabido es que "[l]as leyes deberán ser promulgadas conforme al procedimiento que se prescriba por ley y [que] contendrán sus propios términos de vigencia". Art. VI, Sec. 5, Const. E.L.A., LP.R.A., Tomo 1, ed. 1999, pág. 408. *De este modo, las leyes comienzan a regir cuando en ellas así se establezca expresa o tácitamente, bien con referencia a una fecha de calendario o bien con referencia a algún otro dato.* Albaladejo, *op. cit.*, pág. 196. La ley puede disponer que su vigencia sea *inmediata o simultánea*, es decir, para que entre en vigor en el mismo momento de su aprobación(10) o, por el contrario, para que la vigencia *no sea inmediata o sea aplazada.* Albaladejo, *op. cit.*

■ Ahora bien, cuando *sobreviene un cambio de leyes*, a saber, la derogación de una ley vigente por otra posteriormente promulgada, *se plantea el problema de cuál será el alcance temporal de la ley nueva y, por lo tanto, el de la antigua.* J.L. Lacruz Berdejo, *Elementos de Derecho Civil*, Barcelona, Ed. Bosch, 1982, Vol. I, pág. 218; L. Díez-Picazo y A. Gullón, *Sistema de Derecho Civil*, 7ma ed., Madrid, Ed. Tecnos, 1989, Vol. I, pág. 127. En aquellos casos en que una ley antigua sea sustituida por otra nueva, el cambio de regulación y el alcance de la ley recién dictada, respecto a la materia antes regulada por la otra, *se regirán por lo que la nueva ley establezca, bien de forma explícita, en las correspondientes disposiciones transitorias, o bien de forma*

---

(10) De acuerdo con lo anterior, este Tribunal ha expresado que cuando una ley "es aprobada para tener efecto inmediatamente, no procede la contención de que tendrá efecto al siguiente día en vez del día de su aprobación. La palabra 'inmediatamente' significa lo que dice, y la Ley entra en vigor en seguida". *Destilería Serrallés, Inc. v. Buscaglia, Tes.*, 66 D.P.R. 649, 652 (1946).

*implícita*. Albaladejo, *op. cit.*, pág. 202. *Es ahí cuando entran en función disposiciones como el plazo "vacatio legis"*. Estas disposiciones transitorias pueden encontrarse separadas o incorporadas en el articulado de la ley. Lacruz Berdejo, *op. cit.*, pág. 218. Usualmente en ellas se indican los actos o las acciones cobijadas por la antigua y por la nueva ley o, además, el período de tiempo durante el cual perdurará dicho estado de derecho transitorio.

De lo antes expuesto podemos colegir que si bien la Ley Núm. 180, ante, dispuso en su Art. 18 que entraría en vigor inmediatamente, *estableció un plazo "vacatio legis" con relación a las disposiciones del Art. 12* de esta ley. Esto es, la ley entró en vigor el 27 de julio de 1998; sin embargo, las disposiciones del Art. 12 entraron en vigor luego del 27 de julio de 1999 ya que, repetimos, el inciso (e) del referido artículo tuvo el efecto de *diferir o posponer* su vigencia. Como consecuencia, entre el 27 de julio de 1998 y el 27 de julio de 1999 estaba operando la legislación anterior. Todos aquellos casos instados durante ese período se podían beneficiar de los remedios y el estado de derecho de la ley previa.

■■■■■ *Resulta obvio que el referido Art. 12(e) se refiere a un término de vigencia diferida.*[11] No hay duda de que esa fue la intención del legislador al incluir dicha disposición. No hace falta más que referirnos a la Sec. 43 de la anterior Ley Núm. 96, de donde surge claramente que la Ley de Salario Mínimo tuvo como propósito permitir que ciertas disposiciones entraran en vigor en un momento distinto o posterior a la fecha de vigencia establecida.

La Sec. 43 de la Ley Núm. 96, ante, disponía que "[e]sta ley empezará a regir inmediatamente después de su aprobación, *con excepción de aquellas disposiciones que tengan fijada una fecha distinta para su vigencia, las cuales entra-*

---

[11] Es de notar que el Art. 12(e) de la Ley Núm. 180, ante, es idéntico a la Sec. 32(e), que era la disposición equivalente a dicho artículo bajo la anterior Ley Núm. 96 de 26 de junio de 1956.

*rán en vigor en las fechas especificadas"*. (Énfasis suplido.) Sec. 43 de la Ley Núm. 96 (1956 Leyes de Puerto Rico 729). Recordemos que tanto las leyes aprobadas *con anterioridad* como las aprobadas *con posterioridad* a la disposición que está interpretando un tribunal, *deben ser tomadas en consideración para hacer valer la intención legislativa.* Véase *O.E.G. v. Cordero, Rivera*, 154 D.P.R. 827 (2001).

*En virtud de lo antes expuesto, sería ilógico pensar que lo establecido en el inciso (e) del Art. 12 es un nuevo término prescriptivo para instar la reclamación de salarios.* Además, una simple lectura del Art. 12 revela que el término prescriptivo para instar la acción de salarios ya estaba dispuesto en su inciso (a). Allí se establecía que "[p]or el transcurso de dos (2) años prescribirá la acción en reclamación de salarios que pueda tener un empleado contra su patrono al amparo de este capítulo ...". 29 L.P.R.A. sec. 250j (Supl. 1999). *Esto es, aceptar la postura de los apelantes nos llevaría a reconocer que el legislador dispuso dos términos prescriptivos para llevar a cabo la misma acción.* Tal determinación *no* tendría sentido alguno.

A diferencia de un término prescriptivo,[12] el citado Art. 12(e) *no tiene el efecto de extinguir un derecho.* Su objeto es *proveer un corto tiempo adicional* para que, antes de la vigencia del nuevo estado de derecho que alterará el remedio provisto, los interesados puedan instar el pleito y así beneficiarse de la ley anterior cuyo remedio era más amplio. *No conlleva la extinción del derecho que ostentan los demandantes para instar la acción.* Ese derecho no se extinguió si se presentó el pleito en el término de dos años que ordenaba la ley para ese entonces. *Lo que hace el Art. 12(e) es advertirle a la ciudadanía que si se presenta el*

---

[12] La prescripción extintiva es una norma de derecho sustantivo que constituye una forma de extinción de un derecho debido a la inercia en ejercerlo durante un tiempo determinado. *Santiago v. Ríos Alonso*, 156 D.P.R. 181 (2002); *Martínez v. Soc. de Gananciales*, 145 D.P.R. 93, 101 (1998); *García Aponte et al. v. E.L.A. et al.*, 135 D.P.R. 137, 142 (1994).

*pleito fuera del plazo "vacatio legis", el remedio disponible será otro,* esto es, el dispuesto en la nueva ley; ello independientemente de que la acción se hubiese instado dentro del término prescriptivo. *La acción para reclamar salarios puede no haber prescrito, pero si se presentó fuera del "vacatio legis", el remedio disponible se limitará a los salarios de los últimos tres años ya que, una vez transcurrido el plazo "vacatio legis", entran en vigor las disposiciones del Art. 12 de la nueva ley.*

En resumen, tenemos que el término de vigencia diferida o *vacatio legis no* tiene de por sí el efecto de extinguir un derecho abandonado, sino que permite que el pueblo conozca y se prepare para la aplicación de las nuevas disposiciones. Claro está, si como en el presente caso ocurre que al culminar el *vacatio legis* el estado de derecho cambia para eliminar o reducir algún derecho, *parecerá* que el transcurso del *vacatio legis* tuvo el efecto de extinguir un derecho. *No obstante, son las disposiciones de ley que entran en vigor al culminar el "vacatio legis" las que tienen el efecto de reducir o extinguir el derecho.*

Por otro lado, para que se produzca la prescripción extintiva se requiere no sólo del transcurso del tiempo fijado, sino, además, la falta de ejercicio o inercia por parte del titular. *García Aponte et al. v. E.L.A. et al.,* 135 D.P.R. 137, 142–143 (1994).([13]) No obstante lo anterior, al referirnos a un término de vigencia diferida, vemos que este término transcurrirá con el paso del tiempo, el estado de derecho cambiará y todo ello ocurrirá independientemente de la acción o inacción del interesado. Esto es, cuando la Legislatura decide mantener en suspenso la vigencia de alguna disposición estatutaria mediante un término *vacatio legis,* sólo hará falta que el tiempo fijado por el legislador

---

([13]) Véanse, además: Díez-Picazo y Gullón, *op. cit.,* pág. 465; F. Puig Peña, *Compendio de Derecho Civil Español,* 3ra ed. rev., Madrid, Eds. Pirámide, 1976, Vol. I, págs. 684–685; D. Espín Cánovas, *Manual de Derecho Civil Español,* 8va ed. rev., Madrid, Ed. Rev. Der. Privado, 1982, Vol. I, pág. 559.

transcurra para que la nueva disposición legal entre en vigor. La actuación del interesado es irrelevante.

B. Habiendo determinado que el Art. 12(e) *no es un término prescriptivo, sino un término de vigencia diferida de una disposición legal, nos corresponde resolver si es susceptible de extenderse de acuerdo con lo dispuesto en la Regla 68.1 de Procedimiento Civil, ante.* En esta regla se establece, en lo pertinente, que

> [e]n la computación de cualquier término prescrito o concedido por estas reglas, o por orden del tribunal o por cualquier estatuto aplicable, no se contará el día en que se realice el acto, evento o incumplimiento después del cual el término fijado empieza a correr. El último día del término así computado se incluirá siempre que no sea sábado, domingo ni día de fiesta legal, extendiéndose entonces el plazo hasta el fin del próximo día que no sea sábado, domingo ni día legalmente feriado.

Cabe destacar que este Tribunal tuvo la oportunidad de enfrentarse a una *controversia similar* a la de autos hace varias décadas en *Torres v. Méndez,* 44 D.P.R. 7 (1932). En aquella ocasión resolvimos que las disposiciones contenidas en los Arts. 388 y 389 del Código Político, 1 L.P.R.A. secs. 72 y 73 —las cuales son *muy similares* a la Regla 68.1, ante—([14]) *no aplicaban a los términos fijados por una ley para que ésta comience a regir.* En aquel momento expresamos:

> El accidente ocurrió el domingo 12 de agosto de 1928. La Ley de Indemnizaciones por accidentes del trabajo empezaba a regir noventa días después de su aprobación en mayo 14. Eso fu[e] en efecto el día del accidente a menos que ese día

_____

([14]) El Art. 388 del Código Político dispone que "[e]l tiempo en que cualquier acto prescrito por la ley debe cumplirse, se computará excluyendo el primer día e incluyendo el último, a menos que éste sea día de fiesta, en cuyo caso será también excluido". 1 L.P.R.A. sec. 72.

Por su parte, en el Art. 389 del referido Código se dispone que "[c]uando algún acto haya de ejecutarse bajo la ley o en virtud de contrato en un día señalado, y tal día ocurriere en día de fiesta, dicho acto podrá realizarse en el próximo día de trabajo, teniendo el mismo efecto que si se hubiera realizado en el día señalado". 1 L.P.R.A. sec. 73.

haya de ser exclu[i]do, por ser de fiesta legal, al computar el tiempo. Los noventa días en cuestión no eran "el tiempo en que cualquier acto prescrito por la ley" debía "cumplirse". La ley no señaló acto alguno a realizarse el día 12 de agosto. No podemos convenir con el apelante en que la ley empezó a regir el lunes 13 de agosto simplemente porque el domingo 12 de agosto fuera día de fiesta. *Torres v. Méndez*, ante, pág. 9.

Igualmente, en *Destilería Serrallés, Inc. v. Buscaglia, Tes.*, 66 D.P.R. 649, 651–652 (1946), este Tribunal *reiteró* la norma expuesta en *Torres v. Méndez*, ante, al manifestar que "el artículo 388 sólo es de aplicación cuando hay una situación en que deba cumplirse un acto prescrito por la Ley, *y nó cuando como en este caso simplemente está envuelto un cálculo matemático de conformidad con los términos del artículo 34 de la Carta Orgánica*". Íd., pág. 652.([15])

No obstante, dicha norma inexplicablemente fue variada o abandonada por el Tribunal en *Hernández v. Shering*, 159 D.P.R. 367, 372–373 (2003), donde expresamos:

> Lo que estableció el referido inciso (e) del Art. 12 de la ley que aquí nos concierne es que los términos de prescripción que allí se fijaban no afectarían a los casos ya "radicados" en los tribunales, ni a los que se presentasen dentro de un año después de entrar en vigor la ley. *Claramente se trata de una disposición que tiene implicaciones procesales relativas a cuáles acciones podían presentarse y cuáles no, por lo que no se trata simplemente de una disposición sobre la fecha en la cual comenzará a regir una ley o parte de ella.* Como la disposición referida tiene tales consecuencias procesales relativas a la presentación de las acciones previstas, *es evidente que debe aplicarse aquí lo dispuesto en la Regla 68.1 de Procedimiento Civil, supra.*
>
> En segundo lugar, el lenguaje de la citada Regla 68.1 de Procedimiento Civil es amplio y abarcador. Se refiere *a cualquier término prescrito o concedido* por las Reglas de Procedi-

---

([15]) En aquella ocasión este Tribunal tuvo que decidir cómo se debía calcular el término dispuesto en el Art. 34 de la Carta Orgánica, el cual mantenía en suspenso y limitaba la vigencia de las leyes aprobadas por la Asamblea Legislativa por un período de noventa días. Dicho artículo disponía que "ninguna ley de la Asamblea Legislativa entrar[ía] en vigor ... hasta noventa días después de su aprobación ...". *Destilería Serrallés, Inc. v. Buscaglia, Tes.*, 66 D.P.R. 649, 650 (1946).

miento Civil, por orden del tribunal o *por cualquier estatuto aplicable*. A la luz de unos términos tan literalmente abarcadores, no encontramos razón alguna por la cual debe excluirse de lo dispuesto por esa regla el término de un año que se concede en el inciso (e) del Art. 12 de la Ley Núm. 180, *supra*. (Énfasis suplido y en el original.)

■ Un reexamen y análisis sosegado del caso *Hernández v. Shering*, ante, nos convence de que la norma establecida ahí *es manifiestamente errónea*. Además de todos los fundamentos antes expresados en apoyo de la posición que hoy sostenemos, resulta claro que la Regla 68.1 de Procedimiento Civil, ante, *no aplica a todo tipo de término*. El mecanismo de cómputo establecido en esta regla *sólo aplica* a aquellos términos que han sido prescritos o concedidos "por las Reglas de Procedimiento Civil, o por orden del tribunal, o por cualquier estatuto procesal aplicable ...". J.A. Cuevas Segarra, *Tratado de Derecho Procesal Civil*, San Juan, Pubs. J.T.S., 2000, T. II, pág. 1154.

■ *El término que hoy está en controversia no se trata de un término prescriptivo ni de un término dispuesto por las Reglas de Procedimiento Civil, por el tribunal ni por ningún estatuto o regla procesal que exija que las partes actúen en determinado plazo.* Es por ello que *no* le aplica lo dispuesto en la Regla 68.1, ante.[16]

■ En segundo término, y en vista de que el Art. 12(e) se refiere a un término que implica meramente el

[16] La Regla 68.1 de Procedimiento Civil, 32 L.P.R.A. Ap. III, se ha utilizado para situaciones como las siguientes: computar el término para presentar un recurso de apelación, *Coss v. Hospital Interamericano*, 159 D.P.R. 53 (2003); *Medio Mundo, Inc. v. Rivera*, 154 D.P.R. 315 (2001); *Bldg. Fast Cl. Servs. v. Asoc. C.B. Tower*, 147 D.P.R. 874 (1999); *García Claudio v. García Guevara*, 145 D.P.R. 659 (1998); calcular el término para presentar un recurso de revisión administrativa, *Ortiz v. Adm. Sist. de Retiro Emp. Gob.*, 147 D.P.R. 816 (1999); para computar el término para presentar una moción de determinaciones de hecho adicionales, *Soc. de Gananciales v. Sánchez*, 148 D.P.R. 326 (1999); para calcular el término prescriptivo de una acción, *Robert Vizcarrondo v. Srio. de Hacienda*, 114 D.P.R. 566 (1983); *Lugo Ortiz v. Ferrer*, 85 D.P.R. 862 (1962); computar el término para celebrar una vista de determinación de causa probable contra un menor, *Pueblo en interés menor M.A.F.L.*, 126 D.P.R. 238 (1990); para calcular el término para la prestación de una fianza, *Planned Credit of P.R., Inc. v. Page*, 103 D.P.R. 245 (1975).

*cálculo matemático* para la vigencia de una disposición legal, este término *no* está gobernado por los citados Arts. 388 y 389 del Código Político.([17]) *No tendría sentido que, a través de una regla procesal, este Tribunal extienda el término de vigencia de una ley establecido por la Legislatura.* Coincidimos con los pronunciamientos emitidos por el foro apelativo a los efectos de que "[e]s el legislador quien decide la fecha de vigencia de una ley. Si el legislador no se percató de que la vigencia propuesta para dicho artículo iba a coincidir con un día festivo, nada pueden hacer los tribunales al respecto. No tenemos autoridad para cambiar la vigencia de una ley".

Como consecuencia de lo anterior, tenemos que el término de vigencia diferido comenzó el día en que entró en vigor la Ley Núm. 180, ante; *esto es, el 27 de julio de 1998 y se prolongó hasta un año después, o sea, el 27 de julio de 1999.* Posterior a dicha fecha entraron en efecto las disposiciones del Art. 12 de la nueva ley de salario mínimo, que como bien explicamos, sólo permite reclamar los salarios de los últimos tres años. Aun cuando el 27 de julio de 1999 coincidió con el día festivo de José Celso Barbosa, por lo que no aplica la Regla 68.1 de Procedimiento Civil, ante, la vigencia del referido artículo *no* se extendió hasta el próximo día laborable. *Por tal razón, ya para el 28 de julio de 1999 estaban en pleno vigor las disposiciones del Art. 12.*

En vista de que los demandantes instaron su causa de acción el 28 de julio de 1999, el remedio que podían reclamar se regía por el nuevo estado de derecho que lo limitó a la reclamación de los salarios devengados y no pagados de

---

([17]) Los Arts. 388 y 389 del Código Político, ante, han sido aplicados para: calcular el término que tiene el Secretario de Hacienda para notificar una confiscación, *Coop. Seguros Múltiples v. Srio. de Hacienda*, 118 D.P.R. 115 (1986); computar el término para ejecutar una orden de allanamiento, *Pueblo v. Negrón*, 72 D.P.R. 882 (1951); calcular el término para presentar un recurso de apelación, *Sosa v. Tribunal de Distrito*, 70 D.P.R. 62 (1949); transferir al próximo día laborable una venta en pública subasta, *Meléndez v. Registrador*, 35 D.P.R. 878 (1926); computar la fecha de vencimiento del pago de cánones de arrendamiento, *F. Falagán & Cía. v. La Sociedad "Centro Español."*, 32 D.P.R. 356 (1923).

los últimos tres años. *Su acción no estaba prescrita, pero el remedio al que tenían derecho cambió.* Para poder cobijarse bajo el ordenamiento jurídico anterior, y así reclamar los salarios de los últimos diez años, debieron instar su acción entre el 27 de julio de 1998 y el 27 de julio de 1999. La propia ley proveyó y advirtió a la ciudadanía sobre esta oportunidad; sin embargo, los demandantes se cruzaron de brazos y no presentaron su acción a tiempo para poder acogerse a los remedios del antiguo régimen legal.

En vista de lo anterior, *concluimos* que al presentar su pleito el 28 de julio de 1999, *la reclamación de los demandantes quedó sujeta al remedio establecido bajo la nueva Ley de Salario Mínimo, Vacaciones y Licencia por Enfermedad de Puerto Rico, que permite reclamar sólo los salarios de los últimos tres años a partir del momento en que se instó la acción, en cuanto a los empleados que continúan trabajando para su patrono.* Con relación a los empleados que cesaron en su empleo, éstos podrán reclamar los salarios de los últimos tres años contados a partir de la fecha en que cesaron en su empleo. 29 L.P.R.A. sec. 250j(b) y (c). Las reclamaciones de salarios correspondientes a períodos anteriores en tiempo *deben ser desestimadas.*

## III

Finalmente, es preciso atender el planteamiento de los demandantes al argumentar que, aun si concluyéramos que el Art. 12 de la Ley Núm. 180, ante, entró en vigor el 28 de julio de 1999, el término para presentar la demanda fue interrumpido cuando se instó el pleito en diciembre de 1996. En ello se sostienen para argüir que la demanda se presentó en tiempo y que las reclamaciones para solicitar salarios anteriores al 28 de julio de 1996 no deben desestimarse.

No hay duda del efecto interruptor que tiene presentar un pleito de clase en el término prescriptivo de una

acción instada posteriormente por los demandantes en su carácter individual. Dicha norma fue establecida por este Tribunal en *Rivera Castillo v. Mun. de San Juan*, 130 D.P.R. 683 (1992). En ese caso, específicamente, pautamos que cuando se insta un pleito de clase, el término prescriptivo para presentar la acción se interrumpe no sólo para los demandantes que formaron parte del pleito original, sino también para todos los posibles prospectos de la acción, e incluso para aquellos que desconocían los procedimientos, *aun cuando posteriormente el tribunal deniegue la solicitud de certificación de la clase. Por lo tanto, la presentación de un pleito de clase, cuya certificación es posteriormente denegada, interrumpe el período prescriptivo para los litigantes individuales, potenciales miembros de la clase denegada.* Establecimos, además, que el período prescriptivo comienza a computarse de nuevo, con respecto a las personas en su carácter individual, al denegarse la certificación.

De acuerdo con esta norma, queda claro que en el caso de marras, al instarse el pleito de clase en diciembre de 1996, se interrumpió el término prescriptivo establecido por la Ley Núm. 180, ante —que en ese entonces era de dos años— para todos los potenciales miembros de la clase, incluso para aquellos que no conocían los procedimientos judiciales. Cuando en agosto de 1998 este Tribunal denegó finalmente la certificación de la clase, comenzó a transcurrir de nuevo el referido término prescriptivo. Por lo tanto, los interesados tenían hasta agosto de 2000 para instar el pleito en su carácter individual. En vista de lo antes expuesto, no hay duda de que el pleito que dio origen al presente recurso, presentado el 28 de julio de 1999, fue instado en tiempo.

*Ahora bien, lo anterior en nada afecta el resultado al que hoy llegamos.* Como ya hemos explicado, el hecho de no haberse instado el pleito durante el plazo *vacatio legis*, esto es, entre el 27 de julio de 1998 y el 27 de julio de 1999,

*no implica que la acción de los demandantes prescribió ni que perdieron su derecho a reclamar salarios bajo la referida Ley Núm. 180.* Ello en vista de que el plazo establecido por el Art. 12(e) de esa ley no constituye un término prescriptivo. El *único término prescriptivo* dispuesto en la Ley Núm. 180, ante, es el señalado en el inciso (a) del Art. 12, que para la fecha en que se instó la presente demanda establecía un plazo de dos años para presentar cualquier acción de reclamación de salarios. *Por lo tanto, sólo si se presentaba la reclamación fuera de esos dos años es que podría afirmarse que la acción estaba prescrita.* Como vimos, en virtud de la norma de *Rivera Castillo v. Mun. de San Juan,* ante, la acción instada por los demandantes el 28 de julio de 1998 en el presente pleito no estaba prescrita.

Si bien para el 28 de julio de 1999 la acción de los demandantes no había prescrito, *el no haber presentado la acción dentro del término de vigencia diferida tiene el efecto de privar a los demandantes del remedio provisto por la anterior legislación, la cual permitía reclamar los salarios de hasta diez años anteriores.* Por lo tanto, *aun cuando el pleito instado en diciembre de 1996 interrumpió el término prescriptivo y los demandantes instaron a tiempo su reclamación el 28 de julio de 1999, si deseaban acogerse al remedio provisto por la ley anterior tenían que presentar su pleito en o antes del 27 de julio de 1999.* Una vez incoado el pleito luego de esa fecha, a pesar de que la acción no había prescrito, quedaron sujetos al remedio establecido por el nuevo estado de derecho del Art. 12 de la Ley Núm. 180, ante, que entró en vigor el 28 de julio de 1999 y *limitó* la reclamación de salarios a los devengados y no pagados en los últimos tres años.

Además, *no* estamos aquí ante una situación en donde la denegatoria de certificación del pleito de clase se notificó en un día tan próximo a la culminación del plazo *vacatio legis* —27 de julio de 1999— que le impidiera a los deman-

dantes prepararse adecuadamente para presentar su demanda en tiempo para acogerse al remedio provisto por la ley anterior. La Resolución de este Tribunal que deniega la certificación del pleito de clase fue emitida el 25 de agosto de 1998 y notificada el 28 de agosto del mismo año. *Tuvieron casi once meses, tiempo más que suficiente para instar su reclamación en el término adecuado para beneficiarse del remedio provisto por el ordenamiento jurídico anterior.* No obstante, optaron por presentar fuera del término de vigencia diferida. Como consecuencia, su remedio está limitado a lo establecido en el Art. 12 de la nueva ley de salario mínimo.

Recordemos, pues, que si bien es cierto que las leyes laborales deben interpretarse de forma favorable para el obrero, cumpliendo así con el propósito reparador que persiguen —*Irizarry v. J & J Cons. Prods. Co., Inc.*, 150 D.P.R. 155 (2000)— esto no debe utilizarse como justificación para obviar o ignorar los términos expresamente establecidos por el legislador en esos estatutos.

### IV

En mérito de lo antes expuesto, *se confirma la resolución emitida en el presente caso por el Tribunal de Apelaciones. Se limita la reclamación de los demandantes a los salarios devengados y no pagados por los últimos tres años, contados a partir de la presentación de la demanda, para los demandantes que continúan trabajando para el patrono, y a partir de la cesación en el empleo para los que hubiesen cesado de trabajar para éste. Todas las reclamaciones de salarios anteriores a esas fechas se desestiman. Devolvemos el caso al Tribunal de Primera Instancia para que continúen los procedimientos de forma compatible con lo aquí resuelto.*

*Se dictará sentencia de conformidad.*

El Juez Presidente Señor Hernández Denton emitió una opinión de conformidad. El Juez Asociado Señor Fuster Berlingeri emitió una opinión disidente. La Jueza Asociada Señora Fiol Matta disintió sin opinión escrita. El Juez Asociado Señor Rivera Pérez se inhibió.

— O —

Opinión de conformidad emitida por el Juez Presidente Señor Hernández Denton.

Aunque estamos de acuerdo con el curso decisorio tomado por una mayoría de este Tribunal en la controversia que nos concierne, hemos decidido emitir la siguiente opinión de conformidad para expresar nuestro criterio de que la doctrina de *stare decisis* no aplica al caso de autos.

La norma que hoy adoptamos está reñida con la que establecimos hace varios años en *Hernández v. Shering*, 159 D.P.R. 367 (2003) (*Hernández*, supra). No obstante, somos de la opinión de que en el presente caso existen razones de peso que, conforme a las reglas que rigen las excepciones a la doctrina de *stare decisis*, ameritan que rectifiquemos lo resuelto en aquella ocasión. *Veamos.*

I

La doctrina de *stare decisis* se originó en Gran Bretaña poco después de mediados del Siglo XVIII. Su propósito era promover la estabilidad en el sistema de justicia, de manera que el significado de las leyes no fuera variado según las preferencias particulares de cada juez. Sir W. Blackstone, *Commentaries on the Laws of England*, reimp., Londres, Dawsons of Pall Mall, 1966, Vol. 1, pág. 69. No obstante, desde un principio se ha reconocido que esa regla no debe aplicarse mecánicamente porque congelaría en el tiempo precedentes claramente absurdos o erróneos. Por ello, se decía que "esta regla permite excepciones cuando la

decisión previa es evidentemente contraria a la razón". (Traducción nuestra.) Íd.

Conforme a ese criterio, los tribunales federales tradicionalmente se han negado a revocar sus decisiones, salvo cuando resultan ser manifiestamente erróneas. *Payne v. Tennessee*, 501 U.S. 808 (1991); *Smith v. Allwright*, 321 U.S. 649 (1944); *Hornbuckle v. Toombs*, 85 U.S. (18 Wall.) 648 (1873). Véase, también, B.N. Cardozo, *The Nature of the Judicial Process*, New Haven, Yale University Press, 1921, pág. 158.

Durante la primera mitad del Siglo XX, expresamente acogimos esa normativa en nuestra jurisdicción. Por eso, en múltiples ocasiones expresamos que una decisión "no debe ser variada a menos que sea tan manifiestamente errónea que no pueda sostenerse sin violentar la razón y la justicia". *Capestany v. Capestany*, 66 D.P.R. 764, 767 (1946). Véase *García Fernández, Ex parte*, 44 D.P.R. 296 (1932).

Usualmente, un precedente es "manifiestamente erróneo" cuando se demuestra que la decisión fue producto de un razonamiento "procesalmente fallido debido a la pobre calidad de los alegatos y argumentos o al inadecuado proceso deliberativo de la corte". (Traducción nuestra.) W.N. Eskridge, *Overruling Statutory Precedents*, 76 (Núm. 2) Georgetown L.J. 1361, 1370 (1988). Conforme a lo anterior, un dictamen debe ser revocado cuando se estime que el proceso argumentativo que informó la decisión del tribunal estuvo viciado. Íd.

La doctrina del *stare decisis*, a su vez, se ha aplicado cuando concurren tres criterios, a saber: (1) la decisión anterior era claramente errónea; (2) los efectos de la decisión sobre el resto del ordenamiento son adversos, y (3) la cantidad de personas que confían en la decisión es limitada. Eskridge, *supra*, pág. 1409. Véase, también, *United States v. Reliable Transfer Co.*, 421 U.S. 397 (1975).

El primer criterio equivale a la exigencia tradicional de que se demuestre lo "manifiestamente erróneo" de la deci-

sión que se revoca. Esto suele demostrarse mediante prueba de que, durante el proceso deliberativo que produjo la decisión del tribunal, no se consideraron detenidamente todos los argumentos que aplican al caso.

De otra parte, el segundo criterio obliga al tribunal a ponderar los efectos jurídicos, morales y sociales de su decisión para determinar si la norma tiene consecuencias indeseadas.

Por último, el tribunal debe examinar el impacto que la norma que se pretende revocar ha tenido sobre la vida del público en general. A estos efectos, la doctrina de *stare decisis* cobra mayor vigor mientras más amplio sea el número de personas que ha confiado en el precedente. Por el contrario, la doctrina admite más excepciones a medida que el grupo afectado por el precedente sea más limitado.

Por otro lado, la literatura sobre la doctrina de *stare decisis* también refleja una preocupación de que sea invocada mecánicamente por aquellos que se aferran a decisiones manifiestamente erróneas y no rectifican decisiones que nunca debieron ser emitidas. A estos efectos, el reconocido comentarista William Eskridge ha criticado las consecuencias absurdas que puede producir la recalcitrante y "cómica adherencia a una regla estricta en contra de revocar precedentes". Eskridge, *supra*, pág. 1381. Véase, también, F.H. Easterbrook, *Stability and Reliability in Judicial Decisions*, 73 (Núm. 2) Cornell L. Rev. 422, 423–424 (1988).

Con este marco normativo en mente, pasemos a examinar la situación que tenemos ante nos.

II

En *Hernández*, supra, resolvimos que la disposición estatutaria que limita de diez a tres años el período para reclamar salarios adeudados conforme a la Ley Núm. 180 de 27 de julio de 1998 (Ley 180), 29 L.P.R.A. sec. 250 *et*

*seq.*, entró en vigor a partir del 28 de julio de 1999. Ello por que el 27 de julio del mismo año, día en que se supone entrara en vigor la referida disposición, era día feriado.

Luego de reexaminar detenidamente esa decisión, hemos llegado a la conclusión de que debe ser revocada porque consideramos que el referido dictamen es manifiestamente erróneo, que sus efectos sobre el resto del ordenamiento son preponderantemente adversos y que la cantidad de personas que pudo haber confiado en ella es limitada.

Por otro lado, un precedente anterior de este Tribunal no puede convertirse en un talismán que se invoque mecánicamente para evitar una rectificación de una decisión que con el tiempo consideramos debe revocarse por ser patentemente errónea. Aunque coincidimos en que debe haber estabilidad y certidumbre en el derecho, no podemos obtusamente aferrarnos a una decisión anterior de este Tribunal en un asunto como el de autos sobre una interpretación de un estatuto.

Nuestra función judicial nos obliga a velar celosamente porque nuestras decisiones no sólo sean correctas en derecho, sino que también estén bien fundamentadas. En vista de ello, no procede recurrir a la doctrina de *stare decisis* para evadir nuestra ineludible obligación de velar por la corrección de nuestros dictámenes.

La incorrección de nuestra decisión en *Hernández*, supra, emana porque en aquella ocasión no consideramos detenidamente la posibilidad de que la disposición en controversia meramente tuviera el efecto de diferir la entrada en vigor de la Ley 180. Ello porque en aquella ocasión presumimos que la referida disposición creaba un nuevo término prescriptivo al cual se le aplicaba la normativa estatuida en la Regla 68.1 de Procedimiento Civil.[1] Obviamos, no

---

[1] 32 L.P.R.A. Ap. III.

obstante, analizar la intención de la Asamblea Legislativa al establecer dicho precepto. Como se deduce claramente de la opinión mayoritaria, dicha intención demuestra que el propósito de la referida disposición era solamente posponer la entrada en vigencia de la Ley 180. Por último, en aquel momento tampoco nos referimos, como ahora hacemos, al antecedente de esa disposición, es decir, a la Sec. 43 de la anterior ley de salario mínimo, Ley Núm. 96 de 26 de junio de 1956. De ahí surge palmariamente que la Ley de Salario Mínimo, Vacaciones y Licencia por Enfermedad de Puerto Rico tuvo el objetivo de permitir que ciertas disposiciones entraran en vigor en un momento posterior a la fecha de vigencia establecida para el resto de la legislación y no de crear un nuevo término prescriptivo que estuviera sujeto a la regulación preceptuada en la Regla 68.1 de Procedimiento Civil, *supra*.

En fin, luego de un análisis desapasionado de los argumentos antes mencionados, estamos convencidos de que la decisión emitida en *Hernández*, supra, fue claramente errónea y, por ende, debe ser revocada. El caso de autos nos permite rectificar la posición que tomamos en ese momento y no tenemos reparos en así hacerlo. Precisamente por eso hemos decidido suscribir esta opinión de conformidad.

En cuanto al segundo criterio, opinamos que los efectos de *Hernández*, supra, sobre el resto de nuestro ordenamiento jurídico son nocivos. Ello en virtud de que la norma allí establecida subvierte las prerrogativas de la Asamblea Legislativa. Resulta evidente que es a esa entidad a quien le corresponde exclusivamente determinar el momento en que las leyes entrarán en vigor. No obstante, en abierta contravención a dicho principio, en *Hernández*, supra, extendimos, sin autorización legislativa, el período en que entraría en vigor la Ley 180. Al así actuar se puso en entredicho la facultad inherente que tiene la Asamblea Legislativa para dictaminar el período de vigencia de las leyes.

En la opinión disidente del Juez Asociado Señor Fuster Berlingeri se señala que lo que ahora resuelve una mayoría de este Tribunal priva a los trabajadores de exigir el pago de lo que se ganaron durante siete años de labores. Sin embargo, en su argumento no se considera que quien verdaderamente privó a los trabajadores de reclamar los referidos salarios fue la Asamblea Legislativa. No podemos nosotros, a través de una regla procesal, rehusarnos a reconocer lo que expresamente dispuso la Rama Legislativa en cuanto al momento en que empezará a regir una ley. Precisamente por eso es que nuestra decisión en *Hernández*, supra, no puede sostenerse frente a los argumentos que hoy esbozamos a favor de su revocación.

Por último, resulta claro que la norma establecida en *Hernández*, supra, solamente afecta a un número limitado de personas. Los potenciales afectados son los pocos que optaron por presentar reclamaciones salariales el 28 de julio de 1999. No puede decirse, por lo tanto, que revocar esa norma impactaría adversamente a un amplio sector de la ciudadanía puertorriqueña.

A la luz de lo anterior, no albergamos duda de que en el presente caso se cumplen los requisitos necesarios para revocar nuestro anterior dictamen conforme a la doctrina del *stare decisis*. En *Hernández*, supra, como hemos expresado, omitimos analizar ciertos aspectos fundamentales de la disposición en cuestión. Ello fue en detrimento a la prerrogativa de la Asamblea Legislativa de decidir el momento cuando entran en vigor las leyes. Cuando a lo anterior le sumamos que solamente un grupo minúsculo de personas pudieron haber depositado su confianza en la referida norma, quedamos convencidos de que su revocación no vulnera la doctrina del precedente.

Por los fundamentos antes expuestos, estamos conformes con la decisión emitida por una mayoría de este Tribunal.

— O —

Opinión disidente emitida por el Juez Asociado Señor Fuster Berlingeri.

> "The force of precedent in the law is heightened by that almost universal sense of justice which urges that all men are properly to be treated alike in like circumstances."
> Karl Llewellyn

Como se sabe, el Tribunal Supremo de Puerto Rico tiene una función preeminente en el sistema democrático de gobierno que rige en el país, que es la de interpretar la Constitución y las leyes de nuestro ordenamiento jurídico. *Peña Clos v. Cartagena Ortiz*, 114 D.P.R. 576 (1983); *Santa Aponte v. Ferré Aguayo*, 105 D.P.R. 670 (1977). Lo que este Foro determina sobre el alcance y significado de cualquier norma jurídica de nuestra propia jurisdicción es inapelable y obligatorio. Por ello, hemos resuelto que "las Opiniones de este Tribunal son 'ley' en esta jurisdicción al igual que las aprobadas por la Asamblea Legislativa". *Almodóvar v. Méndez Román*, 125 D.P.R. 218, 248 esc. 13 (1990). Por eso se publican nuestras opiniones, que sirven de *precedentes* para los casos tanto judiciales como administrativos que tienen ante sí los foros *a quo*. *Rivera Maldonado v. E.L.A.*, 119 D.P.R. 74 (1987). Por eso también hemos indicado que las personas en el país pueden depender de nuestra jurisprudencia para guiar su conducta. *Peña v. Federación de Esgrima de P.R.*, 108 D.P.R. 147 (1978). Por ello, asimismo nuestras decisiones son objeto de intenso estudio y crítica por parte de los miembros de la profesión jurídica, particularmente por los profesores de Derecho y sus estudiantes.

Conforme a lo señalado antes, una vez emitimos una opinión sobre algún asunto jurídico, de ordinario *ésta nos vincula aun a nosotros mismos en casos futuros*. Al amparo

de la doctrina del *stare decisis*, hemos resuelto que nuestras ponderadas opiniones, una vez emitidas, no deben ser variadas, *"a menos que resulten ser tan manifiestamente erróneas que no pueden sostenerse sin violentar la razón y la justicia"*. *Capestany v. Capestany*, 66 D.P.R. 764, 767 (1946). Véanse: *San Miguel, etc. & Cía. v. Guevara*, 64 D.P.R. 966 (1944); *Banco de Ponce v. Iriarte*, 60 D.P.R. 72 (1940); *García Fernández, Ex parte*, 44 D.P.R. 296 (1932).

Este fundamental principio responde, por un lado, a consideraciones de *trato igual*. La interpretación de algún asunto que rige para unos debe regir también para todos los otros que estén igualmente situados. La pauta que le hemos aplicado a unos debemos aplicarla igualmente a todos los demás que estén en las mismas circunstancias. No actuar así constituiría una crasa arbitrariedad que negaría precisamente nuestro carácter esencial como tribunal de justicia.

El fundamental principio también responde, por otro lado, a esenciales consideraciones sobre la *estabilidad y la certidumbre que debe tener el Derecho*. Precisamente porque nuestras opiniones son parte integrante del ordenamiento jurídico, es esencial que éstas, de ordinario, sean duraderas y definitivas. Si nuestras interpretaciones de las normas jurídicas estuviesen sujetas a cambios corrientes, nadie sabría a qué atenerse; no serían confiables; jueces, administradores, abogados y hasta el público en general no tendrían seguridad alguna sobre numerosos aspectos de la convivencia social. El caos resultante atentaría contra la fe en la justicia que consagra el preámbulo de nuestra Constitución.

Las justificaciones referidas, que informan la fundamental norma del *stare decisis*, son de tan primordial valor e importancia que venimos obligados a seguir nuestros propios precedentes, *aun cuando luego estimemos que alguna decisión previa no fue la más acertada*. Para efectuar la muy inusitada acción de abandonar una opinión nuestra

anterior, *no basta* que posteriormente pensemos que pudimos habernos equivocado al decidir como lo hicimos mediante esa opinión. *Es necesario mucho más*; es decir, es necesario que consideremos que la opinión anterior fue tan *manifiestamente errónea* que no revocarla constituiría *violentar la razón y la justicia*. Así de gravemente errado tiene que haber sido el dictamen considerado para justificar desecharlo. Ello porque cuando abandonamos un precedente nuestro, ponemos en riesgo, a la vez, fundamentales valores de trato igual, de estabilidad y certidumbre en el Derecho, y de confianza en nuestro quehacer judicial.

Estas conocidas nociones sobre el contenido y la razón de ser de la doctrina del *stare decisis* son pertinentes porque la opinión que ahora suscribe aquí una "mayoría" *de sólo tres Jueces* de este Foro es claramente contraria y opuesta a otra emitida por este mismo Tribunal *mediante el voto unánime de los siete Jueces que lo integrábamos* en *Hernández v. Shering*, 159 D.P.R. 367 (2003), hace poco tiempo atrás. En ese caso, *igual que en el de autos*, la cuestión planteada era si estaban a tiempo unas reclamaciones salariales de unos trabajadores de la industria farmacéutica presentadas ante el foro de instancia el *28 de julio de 1999*. La Ley Núm. 180 de 27 de julio de 1998 (29 L.P.R.A. sec. 250 *et seq.*), que reduce de diez a tres el número de años a los que se puede retrotraer una reclamación por salarios no pagados, dispone que el término limitado de tres años no afectaría las reclamaciones judiciales que se presentaran *"dentro de un año después de entrar en vigor esta Ley"*. Como la ley referida entró en vigor de inmediato, *estaban en orden las reclamaciones salariales de diez años* que fuesen presentadas dentro de un año contado a partir del 27 de julio de 1998. Aplicando la Ley Núm. 180, *supra,* los siete Jueces que integrábamos el Tribunal entonces resolvimos unánimemente en *Hernández v. Shering*, supra, que la fecha límite para presentar las reclamaciones salariales que incluyesen diez años era *el 28 de julio de 1999*.

Llegamos a esa conclusión, en primer lugar, *para hacer valer y cumplir el mandato legislativo concreto de la referida Ley Núm. 180* de que dichas reclamaciones todavía podían presentarse hasta dentro de un año después de que ésta entrara en vigor. Nótese que el 27 de julio de 1999 era un día festivo (nacimiento de Barbosa). También eran días festivos el 26 de julio de 1999 (celebración oficial del Día de la Constitución), el 25 de julio de 1999 (domingo) y el 24 de julio de 1999 (sábado). *Durante todos esos días estaban cerrados los tribunales.* El último día hábil había sido el 23 de julio de 1999, pero esa fecha era *cuatro días antes de que hubiese expirado el referido año de gracia dispuesto por la Ley Núm. 180, supra.* Por ende, para darle contenido real al claro mandato legislativo *y no restarle cuatro días a dicho mandato*, resolvimos de modo unánime que la Ley Núm. 180, *supra*, concedía específicamente hasta el 28 de julio de 1999 para presentar reclamaciones por salarios no pagados durante diez años. Nos amparamos para resolver así, además, en lo dispuesto no sólo en la conocida Regla 68.1 de Procedimiento Civil, 32 L.P.R.A. Ap. III —sobre *Cómo se Computan los Términos*— sino también en lo que claramente ordena *el Art. 388 del Código Político*, 1 L.P.R.A. sec. 72, que según hemos resuelto antes, incorpora *"la intención del legislador con respecto a la consideración de los días festivos ..."*. (Énfasis suplido.) *Márquez v. Junta Insular de Elecciones*, 41 D.P.R. 1, 14 (1930). Dispone el referido Art. 388 que

> [e]l tiempo en que cualquier acto prescrito por la ley debe cumplirse, se computará excluyendo el primer día e incluyendo el último, *a menos que éste sea día de fiesta, en cuyo caso será también excluido*. (Énfasis suplido.)

En *Márquez v. Junta Insular de Elecciones*, supra, pág. 14, expresamente resolvimos que, en virtud del citado Art. 388, si el día literalmente señalado por una ley para realizar un acto es día feriado, se le da eficacia a ésta llevándolo

a cabo el día siguiente, *"lo mismo que si [hubiera] sido en el día señalado"*. (Énfasis suplido.)

A pesar de todo lo anterior, una mera pluralidad del Tribunal se atribuye el poder de resolver ahora que la fecha límite para presentar las reclamaciones salariales en cuestión era *el 27 de julio de 1999* y *no el 28 de julio de 1999*, por lo que las reclamaciones presentadas el propio 28 de julio de 1999 sólo pueden incluir los tres años anteriores y no los diez años previos como era antes. *Una supuesta "mayoría", pues, ahora ordena desestimar aquellas reclamaciones de obreros que rebasen los tres años referidos.*

Ahora con su dictamen, tres Jueces del Tribunal en efecto alteran el texto de la referida Ley Núm. 180 y vulneran la auténtica intención legislativa al restarle cuatro días al término de un año que ésta dispuso para la presentación de las reclamaciones salariales de diez años. Con este dictamen, además, la pluralidad referida de Jueces hace caso omiso a lo ordenado por el Art. 388 del Código Político, *supra*, y a la decisión de este Foro en *Márquez v. Junta Insular de Elecciones*, supra, mediante la cual pautamos la aplicación del referido Art. 388. Y lo que es aún más insólito, con este dictamen los tres Jueces aludidos abandonan lo que resolvimos unánimemente los siete Jueces que entonces integrábamos el Tribunal (el Pleno) en un caso idéntico, hace sólo dos años, en *Hernández v. Shering*, supra. *¿Qué motiva toda esta actuación tan inusitada y tan improcedente de tres Jueces de este Foro?* ¿Qué valores o intereses de orden público existen que pueden justificar el *caprichoso vaivén* de los miembros de este Foro que antes estuvieron conformes con nuestra decisión? Muchos se preguntarán qué ha sucedido para que algunos Jueces de este Foro abandonen unos precedentes y cambien de parecer tan ligeramente.

Es menester resaltar que el caso de autos es esencialmente idéntico al de *Hernández v. Shering*, supra. No hay diferencias en los hechos, en las cuestiones o en los asuntos

de estos dos casos que puedan explicar unos dictámenes tan diametralmente distintos. La controversia en el caso anterior fue *debidamente examinada por este Foro y no hay nada en el caso de autos que no conociéramos cuando resolvimos el caso anterior.* Sorprende la "explicación" que ofrecen ahora los Jueces quienes en el caso anterior votaron a favor de que a los trabajadores concernidos se les diera amparo, excluyéndolos de la injusta aplicación de la Ley Núm. 180, *supra.* Señalan ahora que en el caso anterior pensaron erradamente que la nueva disposición estatutaria creaba un nuevo término prescriptivo, en lugar de meramente posponer la vigencia de la citada ley. *Sin embargo, nada de ello surge de la decisión anterior*; más bien, en ésta todos los Jueces de este Foro, sobre todo los más experimentados, sabíamos bien lo que estábamos haciendo: *aplicando correctamente unas establecidas normas de hermenéutica* para lograr un resultado que fuese, a la vez, conforme a la auténtica intención legislativa y, además, justo. Por ello, *no hay justificación razonable alguna para el dictamen de la "mayoría" del Tribunal ahora.* Lo que el Pleno de este Tribunal pautó deliberadamente *de modo unánime* hace poco tiempo atrás en un caso esencialmente igual al de autos *no es de modo alguno tan manifiestamente erróneo que violente la razón y la justicia.* Por ende, conforme a la norma que rige el asunto de los precedentes, no procedía que una pluralidad de tres Jueces revoque ahora lo resuelto unánimemente por todo el Pleno de este Foro hace poco en *Hernández v. Shering,* supra.

Es menester enfatizar que nuestra decisión anterior no sólo no puede ser considerada de modo alguno como manifiestamente errónea, sino que, además de ser claramente correcta en Derecho, es indudablemente *más justiciera* que la de la "mayoría" de tres Jueces del Tribunal en el caso de autos. Conforme a lo que resolvimos unánimemente los siete Jueces de este Foro en *Hernández v. Shering,* supra, el grupo de trabajadores demandantes en el caso de autos

podía reclamar el pago de salarios debidos y no pagados durante los últimos diez años, del mismo modo que pudieron hacerlo los trabajadores del caso anterior. El dictamen de tres Jueces, sin embargo, ahora les limita sustancialmente ese derecho. Por un día de diferencia (que tiene su clara razón de ser), descartando injustificadamente un precedente claro, vinculante y unánime del Pleno de este mismo Tribunal, ignorando normas patentemente aplicables y haciendo caso omiso de la auténtica intención legislativa, una pluralidad de este Foro accede a las pretensiones de la poderosa industria farmacéutica para privar ahora a unos modestos trabajadores de exigir el pago de lo que se ganaron con el sudor de su frente durante siete años de labores. De ese modo, menoscaban nuestra más elevada función de hacer valer los derechos de los más desventajados y, en su lugar, anteponen un errado manejo de meros conceptos por encima de unas realidades humanas, como si el Derecho fuese sólo un juego de abstracciones, de reglas y reglitas, al margen de los propósitos sociales y las necesidades de la gente, y al margen también de toda consideración de lo que es justo y de lo que es la solidaridad humana.[1]

Como yo no comparto tal visión del Derecho, como creo que los trabajadores del caso de autos tienen *un derecho en justicia* a que se les pague adecuadamente por sus esforzadas labores, como considero que debemos acatar la auténtica intención legislativa, como pienso que este Foro debe ser no sólo consecuente con sus dictámenes previos sino, además, valiente en la defensa de los desventajados, y como estimo que la muy improcedente revocación de nuestra decisión anterior por una mera pluralidad de Jueces sólo puede causar gran desprestigio a este Tribunal, yo disiento.

---

[1] Véase J.B. Fuster, *La solidaridad en el proceso judicial*, 41 (Núm. 1) Rev. Der. Pur. 1 (2002).