SAN MIGUEL, GONZÁLEZ Y VALIENTE y COMPAÑÍA, demandante y apelada, *v.* MIGUEL GUEVARA y M. CASILDO GUEVARA, demandados y apelantes.

Núm. 9039.—*Sometido:* Enero 17, 1945. *Resuelto:* Mayo 9,`1945.

*García Méndez & García Méndez,* abogados de los apelantes; *E. Martínez Rivera* y *Luis Blanco Lugo,* abogados de la apelada.

El Juez Asociado Señor Todd, Jr., emitió la opinión del tribunal.

M. Casildo Guevara y Miguel Guevara suscribieron en el año 1931 el pagaré([1]) que es objeto de la presente acción en cobro de dinero.

El 29 de septiembre de 1932 la Corte de Distrito de San Juan dictó una orden en el caso civil número 17,493 titulado *Fano, Tesorero Interino de Puerto Rico* v. *Banco Territorial y Agrícola de Puerto Rico,* mediante la cual dicha institución bancaria quedó sometida a una Administración Judicial para su liquidación bajo la jurisdicción de la referida corte. Dentro de ese procedimiento y después de celebrarse la correspondiente subasta pública, el 7 de enero de 1943 la Corte dictó otra orden instruyendo al Banco Popular de Puerto Rico, nombrado Liquidador del Banco Territorial y Agrícola en 10 de mayo de 1937, para que traspasara a Agustín Valiente Granda, previo pago de la suma de $8,000, todos los créditos pertenecientes al Banco en liquidación que estaban pendientes de cobro y los cuales se calificaban de incobrables. Entre estos créditos, cuyo total ascendía a una suma alrededor de $400,000, hallábase el pagaré objeto de este litigio.

Así las cosas, el 10 de marzo de 1943 la sociedad civil San Miguel, González y Valiente y Compañía entabló demanda contra M. Casildo Guevara y Miguel Guevara en cobro de la obligación antes mencionada, alegando ser su tenedora, y solicitando sentencia por la suma de $22,449.34, a saber: (*a*) $10,139.72, o sea, la suma a la cual había que-

---

([1])En lo pertinente dice así:

"Por $12,000. Valor a 15 de enero de 1932.

"Pagaremos solidariamente al Banco Territorial y Agrícola de Puerto Rico, en el local de su establecimiento o a su orden, el quince de enero de mil novecientos treintidós la suma de DOCE MIL 00/100 DOLLARS, valor recibido en préstamo y nos obligamos también solidariamente a pagar intereses de doce por ciento anual en caso de mora y las costas y gastos que ocasione el cobro de esta deuda y los honorarios del abogado que el Banco utilice en caso de reclamación judicial."

dado reducido el principal de la obligación a virtud de varios abonos, más (b) $12,309.62 por concepto de intereses al 12 por ciento anual devengados desde el 15 de enero de 1932, fecha en que había quedado vencido el pagaré.

Los demandados formularon excepción previa alegando que la demanda no aduce hechos suficientes constitutivos de causa de acción, pero la Corte de Distrito de Arecibo, a la cual se trasladó la causa, la declaró sin lugar por el fundamento de que si bien en el memorándum presentado por los demandados se alegaba que la acción había prescrito por tratarse de un pagaré a la orden, que tiene la presunción controvertible de ser una obligación mercantil, la excepción previa que se había presentado era una de carácter general en la cual no se alegaba específicamente la defensa de prescripción, y que por consiguiente la demanda aducía hechos suficientes.

Contestaron entonces los demandados reproduciendo la excepción previa, aceptando el otorgamiento del pagaré, y alegando como materia nueva de defensa que la acción en cobro del pagaré había prescrito por tratarse de una obligación mercantil.

Practicada la prueba y oídas las partes, la Corte dictó sentencia declarando con lugar la demanda, condenando a los demandados a pagar la suma de $22,449.34, e imponiéndoles además las costas, intereses legales y $300 para honorarios de abogado. Los demandados apelaron.

 Sostienen los apelantes en primer término que tratándose de un pagaré librado a la orden, dicho documento tiene la presunción *juris tantum* de ser mercantil y que por consiguiente, a menos que se demuestre lo contrario, prescribe a los tres años de acuerdo con el Código de Comercio; que al no alegarse en la demanda que el pagaré no era mercantil, ella podía ser excepcionada; y que la Corte erró al declarar sin lugar la excepción previa por falta de hechos.

¿Es necesario alegar la prescripción específicamente en la excepción previa? El caso de autos no se rige por las nuevas Reglas de Enjuiciamiento Civil, ya que la excepción previa fué resuelta por la corte con anterioridad a la fecha de empezar a regir la misma, y siendo esto así, la regla adoptada por este Tribunal es en el sentido de que una excepción previa general en la cual no se especifica la prescripción como el defecto en que la misma se basa no es suficiente para que se declare sin lugar la demanda. *Guzmán* v. *Vidal,* 8 D.P.R. 345, 351; *Catoni* v. *Martorell Vda. de. Prado,* 38 D. P.R. 328, 331. En idéntica forma se ha manifestado la mayoría de las jurisdicciones norteamericanas y en particular California: *Joergenson* v. *Joergenson,* 68 Pac. 913; *Miller* v. *Parker,* 18 P. (2d) 89; *Graham* v. *Los Angeles First Nat. Trust & Savings Bank,* 43 F. (2d) 543, 546; *Gillie et al.* v. *Pan-American Western Petroleum Co.,* 44 P. (2d) 311.(²)

La situación que presenta el caso de autos cae claramente bajo la regla que hemos enunciado, y, por tanto, no erró la Corte de Distrito al declarar sin lugar la excepción previa.

█ En el segundo error se quejan los apelantes de la admisión en evidencia de dos cartas que en 16 de febrero de 1943 dirigiera la sociedad demandante a los demandados en las cuales se hacían gestiones de cobro. Esta prueba fué admitida condicionalmente por la corte inferior, manifestando el juez que si "la prescripción se confirma, no valdría nada; si no se confirma, tendrá el valor que pueda alcanzar en derecho."

---

(²)Igual concepto expresa Bancroft, 1 *Code Pleading,* sección 330:

"Como regla general, la alegación de que una acción ha prescrito puede hacerse tanto en una excepción previa como en una contestación—en la excepción previa si de la faz de la demanda aparece que la acción ha prescrito, y no se alegan hechos que coloquen la acción fuera del alcance del estatuto; en la contestación si la acción en verdad ha prescrito, pero este hecho no aparece de la faz de la demanda. . . . En ningún caso puede dependerse del estatuto mediante negativa general; deberá alegarse específicamente, *especialmente cuando se solicita el beneficio de un estatuto que solamente se aplica a una clase particular de casos."* (Bastardillas nuestras.)

La objeción de los demandados consistió en que, de acuerdo con el artículo 941 del Código de Comercio (Ed. 1932) : "La prescripción se interrumpirá por la demanda u otro cualquier género de interpelación judicial hecha al deudor; por el reconocimiento de las obligaciones, o por la renovación del documento en que se funde el derecho del acreedor," y que siendo las cartas requerimientos extrajudiciales, no debieron ser admitidas en evidencia como gestiones de cobro demostrativas de la interrupción de la prescripción. No tienen razón los apelantes.

Ante la corte estaba la cuestión, fundamental en este caso, de si el pagaré era uno de carácter mercantil o no. Esa cuestión sólo podía ser determinada de acuerdo con la prueba. De ser el préstamo objeto del pagaré uno de naturaleza civil, la acción para su cobro se regiría por el Código Civil, y sería de aplicación entonces su artículo 1873 que dispone que: "La prescripción de las acciones se interrumpe por su ejercicio ante los tribunales, *por reclamación extrajudicial del acreedor* y por cualquier acto de reconocimiento de la deuda por el deudor." (Bastardillas nuestras.)

No se cometió el imputado error ya que el valor probatorio de las cartas dependía de si de la prueba aparecía que el préstamo era civil o mercantil.

■■ Por el tercer señalamiento sostienen los apelantes que la Corte de Distrito erró al resolver que no se trata de un pagaré mercantil y que, por tanto, la acción no había prescrito.

Repetidamente hemos resuelto que un pagaré a la orden tiene la presunción controvertible de ser mercantil.[3] ¿Fué

---

[3]Desde el año 1906, en el caso de *Hernández* v. *Muñiz*, 10 D.P.R. **17, 20,** este Tribunal adoptó la doctrina expuesta en la Sentencia del Tribunal Supremo de España, de 25 de enero de 1898, *Silvestre Ayoldi* v. *Banco de España*, 83 Jurisprudencia Civil 160, estableciendo que:

". . . la expedición de pagarés a la orden y sus endosos deben reputarse actos mercantiles, con arreglo al art. 2o. del Código de Comercio, por ser de los expresamente definidos en este cuerpo legal, y por lo tanto, hay la presunción de que proceden de operaciones de comercio, salvo prueba en contrario."

controvertida esa presunción en el caso de autos? Veamos, en síntesis, la prueba aportada.

El único testigo de la demandante fué Miguel Antonio Guevara, que declaró ser hijo de Miguel Guevara y sobrino de M. Casildo Guevara, respectivamente, o sean los demandados en este caso; que él intervino cuando se otorgó el pagaré; que el mismo representa "la consolidación de unas cuantas obligaciones más que se originaron en el transcurso de las operaciones" de su padre con el Banco "a través de sus años de negocios" pues el Banco le daba crédito a su padre "para sus negocios mercantiles", ya que él se dedicaba a negocios de compraventa de tabaco en rama, tabaco hilado y frutos del país; que su padre tenía un crédito y se descontaban obligaciones para hacer fondos con que afrontar las operaciones del negocio; que el Banco le proporcionaba dinero y le descontaba documentos, giros, para dichas operaciones; que el Banco no le daba refacción a su padre pues no era un negocio agrícola y sí uno puramente mercantil; que cada vez que había una operación de crédito en la cuenta corriente de su padre se suscribía una obligación; que habían muchos créditos y el Banco exigió que se hiciera una sola obligación para recoger los otros y en esa forma éstos fueron eliminados; que tanto su padre como el otro firmante de la obligación eran comerciantes; que la forma en que el Banco le dió crédito a su padre fué que "éste suscribía obligaciones o giros, distintos documentos mercantiles, que se

Se ratificó la doctrina en *Salgado* v. *Villamil et al.*, 14 D.P.R. 449, 457 (1908) y *Rošaly* v. *Alvarado*, 17 D.P.R. 109, 111 (1911); y aunque en *J. Ochoa y Hermano* v. *Herederos de Lanza*, 17 D.P.R. 420 se afirmó que los pagarés a la orden son documentos mercantiles, tal decisión se aclaró en *Vázquez* v. *Laíno*, 23 D.P.R. 235 (1915) donde se reiteró la existencia de la presunción *juris tantum* en cuanto al carácter mercantil de tales documentos. Posteriormente la doctrina ha sido ratificada hasta el día de hoy en las decisiones de *Román* v. *Martínez*, 25 D.P.R. 654; *Fernández* v. *Ruiz Soler et al.*, 27 D.P.R. 80, 83; *Barros* v. *Padial*, 35 D.P.R 258; *Catoni* v. *Martorell Vda. de Prado*, supra; *Totti* v. *Fernández*, 40 D.P.R. 636; *Pierluisi* v. *Monllor*, 42 D.P.R. 7; *Sucn. Franceschi* v. *González*, 42 D.P.R 939, 947; *Blondet* v. *Garáu*, 47 D.P.R. 863; *Barceló & Co., S. en C.*, v. *Olmo*, 48 D.P.R. 247, 249; *Banco de P. R., Liquidador, etc.* v. *Rodríguez*, 53 D.P.R. 174, y *Cayere* v. *Buxó*, 62 D.P.R. 910.

traían al Banco'' y se abonaban en la cuenta de su padre y entonces él giraba contra esos fondos; que se giraba contra muchos compradores y se ofrecían al Banco y se abonaban en cuenta y cuando no eran pagados le avisaban y entonces se cubrían con las obligaciones que se suscribían; que en esa forma su padre hizo negocios durante muchos años; que las obligaciones que se consolidaron en una todas procedían de esa clase de negocios; que en el año 1928 con motivo del temporal de San Felipe su padre tuvo una pérdida grande y en el 1930 una pérdida total con motivo de un incendio en los almacenes principales; que el Banco continuó dándole crédito; que el pagaré objeto de esta acción es la ''consolidación de varias otras obligaciones que estaban con distintas firmas en la cartera del Banco'' y se siguió el mismo curso de los negocios; que los giros eran contra las personas a quienes le vendían mercancía, se abonaban en cuenta y cuando no se pagaban se suscribía un pagaré; que se llegó hasta pignorar al Banco doscientos rollos de tabaco hilado como garantía del préstamo los cuales se vendieron y su producto se acreditó al pagaré; que ese tabaco procedía de compras que hiciera su padre en su negocio,(⁴) que su padre se dedicaba a la agricultura también pero las cuentas de ese negocio las tenía en otros bancos y llevaba libros diferentes y separados de los de sus negocios comerciales.

La prueba de los demandados consistió en la declaración de los testigos José Otero Chaves, Enrique Alcaraz y Miguel Antonio Guevara. El primero declaró ser comerciante y que hizo negocios de tabaco con Miguel Guevara que te-

---

(⁴) El *Exhibit* D de la prueba documental de la demandante es una carta del demandado Miguel Guevara dirigida al Banco en enero 25 de 1933 en la cual en relación con este tabaco le decía, en parte, lo siguiente:

''Quiero referirme a los 200 rollos de tabaco hilado para mascar que tengo pignorados a ustedes para manifestarles que a mi mejor manera de apreciar este negocio, estimo que ya es tiempo de ir realizando los mismos. Me parece conveniente que ustedes se dispongan por su venta, bien por su propia intervención o por mi conducto, pues el mercado no parece que mejore nada más de ahora en adelante, mientras que el tabaco ya principia a bajarse de clase, en virtud de su tiempo de estar hechos.''

nía una tienda de provisiones en el barrio Bejuco de Isabela pues éste se dedicaba también al negocio de tabaco y frutos menores; que el testigo tuvo la razón social Otero Hermanos y Guevara les compraba materiales de construcción y le pagaba con cheques o mediante giros que descontaba en el Banco Territorial y Agrícola; que él sabe que Guevara tenía sus negocios comerciales con dicho Banco; que el demandado Casildo Guevara también era comerciante y tenía otra tienda de provisiones en el mismo barrio.(⁵)

El Sr. Alcaraz, ex Gerente del Banco Territorial y Agrícola de Arecibo corroboró la declaración de Miguel Antonio Guevara en el sentido de que todas las operaciones de Miguel Guevara con el Banco procedían de su comercio; que el Sr. Guevara "hacía giros a cargo de otros comerciantes y los depositaba en el Banco y cuando algunos de los giros eran devueltos por algún motivo se le cargaban, en su misma cuenta," y entonces cuando la cuenta quedaba en descubierto, o se expedía algún cheque sin fondos, se suscribían pagarés.

Somos de opinión que esta prueba en lugar de destruir la presunción de mercantil que tenía la obligación la ratificó. La prueba, en conjunto y sin contradicción, demostró que el Banco exigió que Miguel Guevara suscribiera un pagaré que había de sustituir una serie de obligaciones de carácter mercantil, otorgadas por él a través de negocios como comerciante con otras personas y entidades. La procedencia mercantil de estas operaciones no ha sido controvertida. Por el contrario la propia prueba de la demandante la estableció.

En el caso de M. Gómez & Co. v. Guerra, 42 D.P.R. 877, se substituyó un pagaré que no estaba expedido a la orden por ser únicamente una garantía de pago, por un pagaré a la orden de la demandante, y se resolvió que si bien el último documento tenía la presunción de ser mercantil por

---

(⁵) Se estipuló que de declarar el testigo Diego G. González lo haría en la misma forma que Otero.

estar expedido a la orden, "los hechos que aparecen de la prueba destruyen esa presunción porque fué una substitución del documento precedente, el que no siendo mercantil, como hemos dicho, no convirtió en comercial el último documento." (Pág. 879.) A la inversa, en el de autos, demostrando la prueba que las obligaciones precedentes eran de carácter mercantil, al ser sustituídas y consolidadas en el pagaré objeto de reclamación, tuvo el efecto de conservar para éste el carácter comercial que aquéllas tenían. Además, todos los préstamos hechos por el Banco a Guevara eran dedicados por éste a sus actividades mercantiles y aunque esta circunstancia por sí sola no sería suficiente para ratificar la presunción, sí es un elemento que unido a la procedencia de las operaciones anteriores justifica la conclusión a que hemos llegado.

■ Arguye la apelada que según la sentencia del Tribunal Supremo de España de 8 de abril de 1926, 170 J. C. 586, el extremo de que un pagaré proceda de operaciones mercantiles "no puede presumirse por el mero hecho de estar extendido . . . a la orden . . . sino que, por el contrario, ese extremo forzosamente ha de resultar probado para dar al pagaré dicha condición de mercantil." Si el efecto de esta sentencia es revocar la doctrina establecida en la de 25 de enero de 1898, supra, escolio 2, adoptada y ratificada por este tribunal durante cerca de cuarenta años, no estamos obligados a seguirla.(⁶) La presunción de que el pagaré expedido a la orden procede de operaciones de comercio "salvo prueba en contrario" significa que dicha presunción opera a favor de los demandados y que la prueba en contrario "corresponde a la demandante presentarla para destruir tal presunción." Que así se continúa interpretando la

---

(⁶) Como dijimos en *García Fernández, Ex parte,* 44 D.P.R. 297, aplicando la regla de *stare decisis:* "Una vez que una cuestión ha sido deliberadamente resuelta luego de argumentos solemnes, no debe ser variada, a menos que sea tan manifiestamente errónea que no pueda sostenerse sin violentar la razón y la justicia."

jurisprudencia de España, no obstante la sentencia citada, lo demuestra R. Gay de Montellá en su Código de Comercio Español Anotado, edición de *1936,* cuando dice:

"Lo que no dijo el legislador al regular la materia relativa a las libranzas, vales y pagarés a la orden, respecto a su comercialidad, lo ha dicho reiteradamente el Tribunal Supremo en su jurisprudencia. Hay libranzas, vales o pagarés mercantiles y civiles. Para los primeros no es necesario que el librador y el obligado sean comerciantes, como algún autor, al comentar estos artículos, ha venido a suponer. El carácter comercial de estos documentos deriva exclusivamente de la objetividad de las operaciones que les han dado origen. *Si estas operaciones resultan de actividades mercantiles, o son ayudas financieras para compra de materias primeras,* de maquinaria, *o para hacer frente a situaciones bursátiles o para proporcionarse numerario para implantar una empresa, entonces la comerciabilidad de la operación se sobrepone al carácter subjetivo de los contratantes* y por ello el documento cae bajo el imperio del Código de Comercio, por medio del cual el documento libranza, vale o pagaré a la orden, puede ser endosado y avalado, y puede ser protestado y sometido a los mismos preceptos de ejecutividad que la letra de cambio. Este es el sentido fundamental de la regulación del pagaré a la orden por el Código de Comercio, regulación que la confirman las sentencias de 12 de diciembre 1889, 18 abril 1896, 25 noviembre 1898 y 11 mayo 1927. . . .

"El juez será quien, en presencia de las pruebas que se suministren, calificará el documento de civil o de mercantil, *inclinándose, de acuerdo con el texto de la sentencia de 28 enero 1898, por la calificación de mercantil, cuando por falta de pruebas en contrario se tratase de pagarés extendidos a la orden y de sus endosos."* (Tomo III-2do., pág. 667–8.) (Bastardillas nuestras.)

Habiendo transcurrido más de once años desde la fecha del vencimiento del pagaré hasta la iniciación de la acción para su cobro y habiendo llegado a la conclusión de que el mismo es de naturaleza mercantil, es obvio que la acción había prescrito de acuerdo con el artículo 946 del Código de Comercio. Erró la corte inferior al no resolverlo así y en su consecuencia *procede la revocación de la sentencia dictada y en su lugar dictarse otra declarando sin lugar la demanda.*