Opinión disidente emitida por el
Juez Presidente Señor Hernández Denton, a la cual se une la Jueza Asociada Señora Fiol Matta.
En este caso, una mayoría de los miembros de este Tribunal se ampara en un tecnicismo procesal que habíamos superado hace más de medio siglo para revocar la determinación de causa probable para acusar a la ex agente Zulma Díaz De León por el delito de asesinato en primer grado y el delito menor incluido de agresión, ambos en grado de cooperadora. Ello a pesar de que hace apenas unas semanas confirmamos la determinación de causa probable para el arresto de su ex compañero de la Policía, el Sr. Carlos Sustache Sustache, por los mismos delitos y bajo la óptica precisa de la misma prueba, la cual apuntaba razonablemente a la cooperación de ambos en la comisión del asesinato del Sr. Miguel Cáceres Cruz a manos de otro compa *931 ñero de la Policía, el Sr. Javier Pagán Cruz. Véase Pueblo v. Sustache Sustache, 176 D.P.R. 250 (2009).
En este sentido, la opinión del Tribunal no se fundamenta en los méritos de la controversia sobre las figuras del cooperador o de la comisión por omisión que surgen del Código Penal de 2004 (33 L.P.R.A. sees. 4647 y 4672), sino en ciertas discrepancias con el proceso apelativo que se siguió en este caso. En particular, la mayoría aprovecha la ocasión para elaborar una nueva interpretación, de gran imprecisión técnica y en total contravención de nuestra jurisprudencia, sobre la procedencia del recurso de certiorari disponible para el Ministerio Público cuando se determina ausencia de causa probable en un procedimiento penal. Según el Tribunal, para que pueda utilizarse dicho recurso, el Estado debe agotar primero el remedio de la vista en alzada provista en nuestro ordenamiento procesal penal.
De esta manera, la opinión del Tribunal restringe innecesariamente la facultad del Ministerio Público para solicitar la corrección de un claro error de derecho del Tribunal de Primera Instancia. En vez de diseñarse mecanismos que aceleren los procedimientos penales en los tribunales, hoy se invoca una visión del recurso de certiorari que obliga al Ministerio Público a seguir un largo camino, a expensas de que en el proceso el Estado pierda la oportunidad de utilizar los testigos necesarios para probar su caso.
Por entender que este asunto procesal no es novedoso ni, mucho menos, amerita revocar varios casos recientes en circunstancias que según la doctrina de stare decisis no cumplen con los requisitos para dejar sin efecto un precedente, respetuosamente disentimos.
I
En este recurso, Díaz De León nos solicita la revisión del mismo dictamen del Tribunal de Apelaciones que ya modificamos en Pueblo v. Sustache Sustache, supra. En ese caso nos circunscribimos a revisar la determinación de *932 causa probable para el arresto de Sustache Sustache y su posible responsabilidad penal como cooperador en los incidentes relacionados con el asesinato del señor Cáceres Cruz, ocurrido en el municipio de Humacao. Repasemos brevemente los incidentes que condujeron a esta bifurcación procesal.
En agosto de 2007, el Ministerio Público presentó unas denuncias separadas contra Pagán Cruz por el delito de asesinato en primer grado y contra Sustache Sustache y Díaz De León por el delito de asesinato en primer grado, en la modalidad de cooperador. El Tribunal de Primera Instancia, Sala Superior de Humacao, encontró causa probable para el arresto de Pagán Cruz y de Díaz De León, por lo que señaló la vista preliminar para el mes siguiente.
No obstante, el foro primario no encontró causa probable para el arresto de Sustache Sustache, por lo que el Ministerio Público solicitó una vista en alzada bajo la Regla 6(c) de Procedimiento Criminal, 34 L.P.R.A. Ap. II. Tras celebrarse la vista en alzada, el tribunal determinó nuevamente que no existía causa para arresto.
Posteriormente, se celebró la vista preliminar para acusar a Pagán Cruz y a Díaz De León. El Tribunal de Primera Instancia encontró causa probable para acusar a Pagán Cruz por el delito de asesinato en primer grado e infracción a la Ley de Armas de Puerto Rico, pero no encontró causa para acusar a Díaz De León por el delito de asesinato en primer grado, en la modalidad de cooperadora.
Inconforme, el Estado presentó dos recursos de certiorari ante el Tribunal de Apelaciones para que se revocara tanto la determinación de no causa contra Sustache Sustache en la vista de causa probable para arresto en alzada, como la determinación de no causa contra Díaz De León en la vista preliminar. El foro apelativo consolidó y expidió los recursos por entender que la controversia presentada en ambos era de estricto derecho y versaba sobre los mismos hechos. Además, sostuvo que la decisión del foro primario en el sentido de que no había causa probable en ambas *933 instancias estaba esencialmente desvinculada de los hechos del caso.(1)
Examinado el asunto, el tribunal apelativo revocó al foro de instancia en ambos recursos. En específico, determinó causa probable para acusar a Díaz De León y para arrestar a Sustache Sustache por el delito de asesinato en primer grado y el delito menor incluido de agresión, en grado de cooperadores, dado que los agentes cometieron la omisión de intervenir para evitar que Pagán Cruz agrediera de muerte al señor Cáceres. Además, determinó causa probable para el arresto de ambos por el delito de encubrimiento, en la modalidad de autores, debido a que le proveyeron información falsa al Ministerio Público sobre los sucesos relacionados con el caso.
Al recibir en este Foro los recursos de certiorari de ambos imputados, decidimos atenderlos por separado. El 9 de julio de 2009 expedimos únicamente el recurso presentado por Sustache Sustache y modificamos la sentencia recurrida. En síntesis, confirmamos la determinación de causa probable para arresto emitida por el Tribunal de Apelaciones contra Sustache Sustache en cuanto al delito de asesinato en primer grado y el delito menor incluido de agresión, ambos en grado de cooperador. Pueblo v. Sustache Sustache, supra.
En esta ocasión, atendemos el recurso presentado por Díaz De León, el cual presenta la misma controversia de derecho y el mismo contexto fáctico. El Tribunal, sin embargo, revoca al foro apelativo bajo la premisa de que “el Ministerio Público abusó del mecanismo de certiorari, ya que tenía un remedio en ley que no utilizó”. Opinión del Tribunal, pág. 923. Según la mayoría, la diferencia fundamental entre ambos recursos estriba en el hecho de que en *934 el caso de Sustache Sustache el Ministerio Público presentó el recurso de certiorari luego de que se celebrara una vista en alzada. En cambio, en el caso de Díaz De León, el Ministerio Público no esperó a que se celebrara la vista en alzada, sino que presentó el recurso certiorari luego de que se determinara no causa en la vista preliminar inicial.(2)
La opinión del Tribunal sorprende por demás. En esencia, parte de la premisa de que el foro apelativo erró al aplicar la normativa procesal vigente en nuestra jurisdicción por las últimas décadas, ya que resuelve que se debía esperar a que se celebrara una vista en alzada antes de acogerse el recurso de certiorari. En ese proceso, la mayoría efectivamente convierte el recurso moderno del certiorari en un recurso extraordinario análogo al injunction e ignora por completo su desarrollo histórico en nuestro ordenamiento procesal. Así, pues, la norma pautada en este caso no tan sólo es contraria a derecho, sino que desprecia la doctrina de stare decisis que rige en esta jurisdicción. Más aún, la nueva doctrina del Tribunal abona a la redundancia y a la ineficacia procesal, en detrimento de la responsabilidad del Estado y de los tribunales de atender con diligencia y prioridad las causas penales.
No puede haber duda alguna al respecto. La opinión del Tribunal legisla mediante fíat judicial un nuevo requisito jurisdiccional en nuestro derecho procesal penal. De ahora en adelante, tras una determinación de ausencia de causa probable basada en un asunto de derecho, el Ministerio Público sólo puede recurrir al Tribunal de Apelaciones mediante un recurso de certiorari luego de agotar todos los remedios disponibles y después de haberse celebrado una vista en alzada. Es decir, por primera vez se le aplica al *935 recurso de certiorari, en el contexto penal, los estrictos principios en equidad del recurso extraordinario del injunction, el cual requiere que el peticionario demuestre la ausencia de un remedio adecuado en ley. 32 L.P.R.A. see. 3523(4).
En definitiva, el razonamiento elaborado por el Tribunal no toma en consideración que el recurso de certiorari que se presentó en este caso no es el recurso clásico y vetusto del derecho común anglosajón, como parece sugerir la opinión al reseñar la historia de esta figura. Más bien, en Puerto Rico el certiorari se ha convertido en un recurso estatutario de carácter ordinario establecido por la Asamblea Legislativa con unas características autóctonas para unos propósitos particulares, que claramente abarcan los incidentes procesales del caso de autos. Ello así, pues dicho recurso se desprendió de los contornos antiguos del derecho común anglosajón hace más de medio siglo. Veamos el trasfondo histórico del certiorari en nuestro medio y cómo este recurso ha enriquecido el derecho procesal puertorriqueño.
II
Tras el cambio de soberanía, el auto de certiorari se introdujo a nuestro ordenamiento en 1904 con la rigidez que históricamente caracterizaba esta figura en Estados Uni-dos y en el Reino Unido. Véase Ley de 10 de marzo de 1904, también conocida como la Ley para Autorizar Autos de Certiorari. Este estatuto se mantiene esencialmente vigente en nuestra jurisdicción, pues un texto análogo a éste constituye hoy el Art. 670 del Código de Enjuiciamiento Civil, 32 L.P.R.A. see. 3491. En lo pertinente al caso de autos, esta disposición establece que el auto de certiorari podrá ser concedido “en aquellos casos en que el procedimiento adoptado no esté de acuerdo con las prescripciones de la ley, y con objeto de terminar los procedimientos *936 cuando el tribunal inferior rehusare hacerlo fundado en bases erróneas”. (Enfasis nuestro.) Id.(3)
En ese sentido, es ilustrativo que las instancias sumamente restrictivas en que se podía expedir este recurso hasta mediados del siglo XX no surgían de un límite jurisdiccional impuesto por el texto de la ley, sino de la interpretación jurisprudencial que se le confirió a esta figura extraordinaria a la luz de su correlación histórica con la figura clásica del derecho común anglosajón. Por ejemplo, y a pesar de que no se establecía de tal forma en la propia ley, este Tribunal limitó su uso para revisar exclusivamente la falta de jurisdicción del tribunal recurrido o los errores de estricto procedimiento. Fernández v. La Corte de Distrito, 6 D.P.R. 202 (1904). En virtud de ello, el recurso de certiorari no estaba disponible para revisar errores de derecho sustantivo u otras cuestiones incidentales del caso que se podrían atender mediante la vía ordinaria. Véanse: Sepúlveda v. Corte, 40 D.P.R. 412 (1930); Manrique v. Diez, 22 D.P.R. 180 (1915); Mongil v. Castro, Juez de Distrito, 19 D.P.R. 682 (1913); Axtmayer et al. v. Aldrey, 14 D.P.R. 643 (1908).
De igual forma, otra limitación inflexible que surgía del propio desarrollo histórico de este recurso era su improcedencia cuando existía un remedio ordinario como la apelación. Ello era consecuencia de la concepción clásica del certiorari como un recurso extraordinario en Estados Unidos e Inglaterra, que sólo procedía si no existía un recurso en ley para revisar las decisiones inferiores, como la apelación o la revisión. Puente v. Corte, 61 D.P.R. 674 (1973); Sánchez v. Corte, 60 D.P.R. 957 (1942).
Como acertadamente nos indica el profesor Rivé Rivera, en las etapas originarias del certiorari en Puerto Rico existía el derecho absoluto de apelar cualquier sentencia final civil o criminal. Ante esa realidad, "la apelación se consi *937 deraba el método natural e indispensable para revisar errores de los tribunales inferiores, por lo que no podía sustituirse por el certiorari”. (Enfasis suplido.) D. Rivé Rivera, Recursos Extraordinarios, San Juan, Programa de Educación Jurídica Continua de la Universidad Interamericana de Puerto Rico, 1989, pág. 171, en A.R. Calderón, Jr. y D. Rivé Rivera, Manual de Procedimientos Apelativos, San Juan, Ed. U.X.P.R., 1987.
Ahora bien, estas limitaciones rígidas a la figura ante nuestra consideración fueron diáfanamente abandonadas por nuestra jurisprudencia hace más de medio siglo. De hecho, como bien expresa el profesor Rivé Rivera, tales criterios inflexibles fueron descartados explícitamente por este Tribunal “en su doctrina y en su práctica”. Rivé Rivera, op. cit., pág. 172. Específicamente, en Pérez v. Tribunal de Distrito, 69 D.P.R. 4 (1948), resolvimos que el auto de certiorari procede para revisar cualquier error de derecho cometido por un tribunal inferior, con total independencia de si se trata de un error de derecho sustantivo o procesal. Al así resolver, repasamos la historia de dicho recurso en nuestro ordenamiento para concluir que las disposiciones pertinentes —y aún vigentes— del Código de Enjuiciamiento Civil no establecían las limitaciones rígidas que fueron reconocidas por el Tribunal en las citadas opiniones de la primera mitad del siglo XX. En atención a ello, revocamos expresamente toda la jurisprudencia y la doctrina imperante que sostenía que el certiorari sólo procedía para revisar errores de procedimiento o de jurisdicción. Pérez v. Tribunal de Distrito, supra, págs. 23— 24.
En concreto, en dicha decisión este Tribunal partió de la premisa de que no era necesario seguir las pautas rígidas del derecho común anglosajón sobre esta figura y que debíamos elaborar un derecho autóctono sobre el particular al amparo de nuestra ley positiva y los parámetros amplios de discreción que se reconocen en su propio texto. Rivé Rivera, op. cit., pág. 172. Posteriormente, este Tribunal siguió esa tendencia liberal basada estrictamente en el al *938 canee amplio que le confirió la Asamblea Legislativa a este recurso. Véanse, por ejemplo: Cubero Vélez v. Insurance Co. of P.R., 99 D.P.R. 748 (1971); Morales v. Tribunal Superior, 84 D.P.R. 123 (1961). Como consecuencia, la figura del certiorari se convirtió en un mecanismo típico y enriquecedor de nuestro ordenamiento jurídico.
Por otro lado, es cierto que siempre hemos sido enfáticos en cuanto a que el certiorari, al tratarse de un recurso discrecional, sólo debe proceder cuando no exista un recurso de apelación o cualquier otro recurso ordinario que proteja eficaz y rápidamente los derechos del peticionario. Pueblo v. Tribl. Superior, 81 D.P.R. 763 (1960). En ese sentido, la discreción del foro apelativo se debe ejercer con cautela y por razones de peso. No obstante, y a diferencia de lo sugerido por la opinión del Tribunal, esto no significa que las leyes o la jurisprudencia de los últimos sesenta años prescriba un impedimento jurisdiccional, basado en la disponibilidad de otro remedio adecuado en ley, para que un tribunal apelativo expida un auto de certiorari a fin de revisar cualquier orden interlocutoria de un foro inferior.
En otras palabras, si el foro apelativo concluye que se cometió un error de derecho en una etapa preliminar del caso y, al amparo de su discreción, entiende que el otro recurso disponible no protegerá los derechos del peticionario de modo eficaz y rápido, no existe obstáculo legal alguno para que proceda el auto de certiorari más allá de los términos estatuidos por la Ley de la Judicatura del Estado Libre Asociado de Puerto Rico de 2003 (4 L.P.R.A. see. 24 et seq.). Así, pues, la autoridad del foro apelativo para emitir este recurso no depende de la disponibilidad de otro remedio adecuado en ley, pues el certiorari ya no es un recurso extraordinario análogo al injunction o al mandamus.(4)
*939 Al igual que el profesor Rivé Rivera, consideramos que “el carácter extraordinario del recurso ha desaparecido para convertirse en una figura jurídica novel y propia a nuestra realidad legal, que nos lleva ahora a una definición más realista de este antiguo recurso apelativo”. (Enfasis suplido.) Rivé Rivera, op. cit, pág. 181. La conversión autóctona de este recurso se perfeccionó aún más con la aprobación posterior de la Ley de la Judicatura de Puerto Rico de 1994 y la Ley de la Judicatura de 2003.(5) En tales estatutos se fijaron términos definitivos para presentar el recurso, en muchos casos de naturaleza jurisdiccional, que tornaron su carácter en uno más ordinario aún de lo que ya era al amparo de la doctrina jurisprudencial. De esa forma, el certiorari se convirtió hace años en un remedio divorciado de los requisitos tradicionalmente asociados a la dicotomía entre ley y equidad, producto del derecho común anglosajón.
Aclarado lo anterior, examinemos el desarrollo de esta figura discrecional en el ámbito de nuestro derecho procesal penal.
III
A. En la primera mitad del siglo XX autorizamos la expedición del certiorari en numerosos casos penales, tanto a solicitud del acusado como del Ministerio Público. Véanse, por ejemplo: Alcalá v. Corte, 66 D.P.R. 430 (1946); Fontaine v. Corte, 57 D.P.R. 139 (1940); Méndez Bas v. Corte, 44 D.P.R. 538 (1933). A su vez, en Rodríguez v. Corte, 60 D.P.R. 919, 920-21 (1942), expresamos que procedía el certiorari “considerando que la cuestión cuya revisión se solicita es una de procedimiento a la vez que de jurisdic *940 ción ... y que contra las órdenes impugnadas no existe recurso de apelación ..
No obstante, es preciso advertir que emitimos tales pronunciamientos antes de que revocáramos la norma restrictiva sobre los asuntos revisables mediante el recurso de certiorari en Pérez v. Tribunal de Distrito, supra. Así, pues, en los últimos cincuenta años hemos reconocido que el recurso de certiorari está disponible para revisar cualquier asunto de derecho, tanto procesal como sustantivo, independientemente de que exista el derecho eventual a apelar u otro remedio disponible. Claro está, lo determinante es que el remedio ofrecido sea rápido y eficaz, sin menoscabar los derechos de las partes.
En ese sentido, en Pueblo v. Tribl. Superior, supra, analizamos el Art. 670 del Código de Enjuiciamiento Civil, supra, y su aplicación a resoluciones y providencias originadas en procesos penales. Partimos de la premisa de que la jurisprudencia de este Foro relativa al certiorari ha estado orientada “por el deseo de ofrecer un remedio rápido y eficaz, tanto en la esfera penal como en la civil, en situaciones en las cuales por deficiencias de los remedios procesales ordinarios esté en peligro la justicia o un importante interés social”. (Enfasis suplido.) Pueblo v. Tribl. Superior, supra, pág. 771. En vista de ello, permitimos que el foro apelativo de aquel entonces revisara, a solicitud del Ministerio Público, el archivo de unas denuncias penales decretado por el foro primario a la luz de una controversia de derecho.(6)
Este trasfondo histórico nos conduce a la norma imperante sobre este recurso hasta hoy, particularmente en lo relativo a su disponibilidad para solicitar la revisión de una determinación de no causa probable —tanto para arresto como para acusar— emitidas por el Tribunal de Primera Instancia.
*941 B. En lo pertinente a este caso, en Pueblo v. Tribunal Superior, 95 D.P.R. 412 (1967), resolvimos mediante Resolución que una determinación en los méritos de un Juez Superior sobre la inexistencia de causa probable no era revisable mediante el auto de certiorari. En específico, concluimos que tales determinaciones no son decisiones de un tribunal, sino de un magistrado que ejerce unas funciones particulares de acuerdo con las Reglas de Procedimiento Criminal. Por ende, en ese caso partimos de la premisa de que los méritos de la determinación del magistrado sobre la inexistencia de causa probable no eran revisables mediante un certiorari. Véase, además, Pueblo v. Tribunal de Distrito, 97 D.P.R. 241, 245 (1969).
Posteriormente, en Pueblo v. Cruz Justiniano, 116 D.P.R. 28 (1984), distinguimos la interpretación restrictiva que se deducía de esa Resolución. En particular, aclaramos que aunque una determinación en los méritos no era revisable, “cualquier otra determinación de derecho sí puede ser revisada mediante el recurso de ‘certiorari’ ”. (Énfasis suplido.) Id., pág. 30.(7) Ciertamente, una determinación de no causa probable que verse sobre un asunto de derecho se incluye en los preceptos revisables contemplados por los estatutos y la jurisprudencia relacionada con el auto de certiorari.
Hasta hoy, este Tribunal se ha adherido fielmente al texto de la Ley de la Judicatura y del Art. 670 del Código de Enjuiciamiento Civil, supra, para permitir la revisión de una determinación de causa probable para arresto o para acusar solicitada por el Ministerio Público, siempre y cuando el asunto planteado sea una controversia esencialmente de derecho. En ese sentido, el foro apelativo puede *942 revisar tal determinación independientemente de que se haya agotado o no la vistas en alzada contempladas por la Regla 6(c) y la Regla 24(c) de Procedimiento Criminal, 34 L.P.R.A. Ap. II. Véanse, por ejemplo: Pueblo v. Sustache Sustache, supra; Pueblo en interés menor K.J.S.R., 172 D.P.R. 490 (2007); Pueblo v. Aponte, 167 D.P.R. 578 (2006); Pueblo v. Rivera Alicea, 150 D.P.R. 495 (2000); Pueblo v. Colón Mendoza, 149 D.P.R. 630 (1999).(8)
Ahora bien, al “reexaminar” la normativa antes ex-puesta, en este caso el Tribunal revoca nuestras decisiones recientes en Pueblo v. Aponte, supra, y Pueblo v. Colón Mendoza, supra, en la medida en que permiten obviar la vista en alzada —tanto la vista de causa probable para arresto como la vista preliminar— antes de acudir mediante un certiorari al Tribunal de Apelaciones si la controversia trata de una cuestión de derecho. Discrepamos de este curso de acción, pues no se ajusta al desarrollo y al dinamismo histórico del recurso de certiorari en nuestro ordenamiento.
IV
A. En Pueblo v. Colón Mendoza, supra, aplicamos ex-presamente la normativa de Pueblo v. Cruz Justiniano, supra, a la revisión de inexistencia de causa probable para arresto en virtud de la Regla 6(c) de Procedimiento Criminal, supra. A la luz de los incidentes procesales narrados en ese caso, aún no se había celebrado ni solicitado la vista en alzada cuando el Ministerio Público presentó el recurso de certiorari al foro apelativo para solicitar la revisión de la determinación de no causa emitida por el foro primario. Al expedir el recurso y atender la controversia de derecho presentada por el peticionario, no encontramos que fuera *943 obstáculo o impedimento alguno el hecho de que no se había celebrado una vista en alzada antes de que se acudiera mediante certiorari al Tribunal de Apelaciones. Tal aspecto procesal, sencillamente, no fue objeto de discusión en esa ocasión.
Posteriormente, en Pueblo v. Aponte, supra, se suscitó una controversia que nos condujo a discutir directamente el asunto atendido por la opinión del Tribunal. En aquella ocasión, el Ministerio Público acudió mediante un recurso de certiorari ante el foro apelativo para revisar la determinación de no causa probable para acusar realizada por el Tribunal de Primera Instancia. Aunque la controversia presentada era evidentemente de estricto de derecho, en decisión dividida el Tribunal de Apelaciones (Martínez Torres, juez ponente, y Hernández Torres, juez, y Brau Ramírez, juez, en voto disidente), se declaró sin jurisdicción por entender que el recurso disponible era la vista preliminar en alzada, no el recurso de certiorari.(9)
No obstante, en Pueblo v. Aponte, supra, revocamos la resolución de dicho panel del Tribunal de Apelaciones por entender que era claramente errónea y contraria al desarrollo histórico del certiorari en esta jurisdicción, ya que la controversia presentada en esa ocasión trataba un asunto de estricto derecho. Reiteramos entonces que este mecanismo está disponible para corregir errores de derecho, independientemente de su naturaleza procesal o sustantiva, tal como lo habíamos aclarado hacía más de medio siglo en Pérez v. Tribunal de Distrito, supra. A su vez, despejamos toda duda en cuanto a su disponibilidad para la revisión de determinaciones de causa probable y señalamos expresamente que se “permite revisar tanto las determinaciones de derecho realizadas en la vista original como las realizadas *944 en la vista en alzada”. (Énfasis suplido.) Pueblo v. Aponte, supra, pág. 583.
A pesar de la claridad de la norma antes reseñada, según la opinión del Tribunal las decisiones de Aponte y Colón Mendoza no son cónsonas con otros casos en los que supuestamente “se reconoció el derecho que asiste al Ministerio Público de utilizar el mecanismo procesal extraordinario del certiorari después de agotar el remedio de la vista en alzada”. (Énfasis suplido.) Opinión del Tribunal, pág. 921. En específico, se refiere a que supuestamente limitamos el alcance del certiorari a que primero se agotara la vista en alzada en Pueblo en interés menor K.J.S.R., supra; Pueblo v. Rivera Alicea, supra, y Pueblo v. Cruz Justiniano, supra.
Tras un análisis detenido y sosegado de dicha jurisprudencia, sin embargo, no encontramos limitaciones ni contradicciones normativas en el ratio decidendi de cada uno de esos casos en cuanto a la disponibilidad del certiorari para revisar las determinaciones de causa probable en casos penales. Tampoco encontramos ahora razón alguna que justifique favorecer un retroceso histórico en el desarrollo de este recurso, para limitar la facultad del Tribunal de Apelaciones para resolver controversias noveles de derecho como las suscitadas en este caso y en Pueblo v. Sustache Sustache, supra.
En realidad, las opiniones a las que la mayoría hace referencia para sustentar su posición versaban sobre la disponibilidad del recurso de certiorari luego de una vista en alzada. No se puede deducir de nuestras expresiones en tales circunstancias procesales que el auto de certiorari no esté disponible para el Ministerio Público si no agota primero la vista en alzada correspondiente. Todo lo contrario, pues en nuestra reciente opinión en Pueblo en interés me-nor K.J.S.R., supra, citada con aprobación por el Tribunal en este caso, expresamos que “a través de dicho mecanismo se puede solicitar la revisión de errores de derecho, tanto procesales como sustantivos, que se aleguen que hayan sido cometidos en la vista de causa probable para arresto, *945 en la vista preliminar inicial y en la vista preliminar en alzada”. (Enfasis suplido.) Id., pág. 500.
B. De otra parte, es muy sorprendente que el Tribunal decida que el desarrollo jurisprudencial y doctrinal de esta figura en nuestro ordenamiento amerita descartar dos precedentes de este Foro de hace apenas tres y diez años. Al examinar la doctrina de stare decisis, hemos reiterado en múltiples ocasiones que cuando una controversia de derecho ha sido deliberadamente resuelta luego de argumentos solemnes, la norma pautada no debe ser variada a menos que su resolución haya sido patentemente equivocada, por lo cual sería irrazonable e inherentemente injusto reafirmar dicha decisión. González v. Merck, 166 D.P.R. 659, 687 (2006), opinión de conformidad; San Miguel, etc. & Cía. v. Guevara, 64 D.P.R. 966, 974 (1945).
Como se reconoce en la opinión del Tribunal, la excepción a la doctrina de stare decisis para justificar la revocación de un precedente se ha aplicado cuando concurren tres criterios, a saber: (1) la decisión anterior era claramente errónea, (2) los efectos de la decisión sobre el resto del ordenamiento son adversos, y (3) la cantidad de personas que confían en la decisión es limitada. Véanse: Pueblo v. Camacho Delgado, 175 D.P.R. 1 (2008); United States v. Reliable Transfer Co., 421 U.S. 397 (1975); W.N. Eskridge, Jr., Overruling Statutory Precedents, 76 Georgetown L.J. 1361 (1988).
En este caso, la mayoría no ha podido articular adecuadamente cómo se ha cumplido con tan siquiera uno de estos requisitos para dejar sin efecto una norma pautada por este Tribunal, según la doctrina de stare decisis. Como he-mos demostrado en la discusión que antecede, la normativa expuesta en Pueblo v. Aponte, supra, y en Pueblo v. Colón Mendoza, supra, no era claramente errónea, sino que en ambos casos se aplicaron de manera fidedigna y práctica los estatutos y la jurisprudencia relacionadas al recurso de certiorari. Del mismo modo, dicha realidad procesal tampoco ha tenido efectos adversos sobre el ordena *946 miento procesal vigente ni, mucho menos, se trata de decisiones de poca confiabilidad en la profesión jurídica o en el resto del país. Más bien, lo único que ha ocurrido desde que se resolvieron ambos casos es un cambio en la composición de este Tribunal.
De hecho, resulta ilustrativo que la opinión disidente del ex Juez Asociado Señor Rebollo López en el ahora revocado Pueblo v. Aponte, supra, versó sobre el asunto de derecho presentado por el Estado y en nada se relacionó con la disponibilidad del certiorari para acudir al foro apelativo en ese caso. También nos llama la atención que en el Análisis del Término 2005-2006 de este Tribunal, publicado en el Volumen 76 de la Revista Jurídica de la Universidad de Puerto Rico, el profesor Chiesa Aponte y el licenciado León Pérez expresaron que la norma sobre el uso del certiorari para revisar las determinaciones de derecho luego de la vista original “no es novedosa”. E.L. Chiesa Aponte y E. León Pérez, Derecho Procesal Penal, en Tribunal Supremo de Puerto Rico: análisis del término 2005-06, 76 Rev. Jur. U.P.R. 617, 625 (2007).
Así pues, todo parece indicar que la cantidad de personas que no confían en las decisiones hoy revocadas se limita a una mayoría de los miembros de este Tribunal. A nuestro juicio, la nueva norma pautada hoy por la opinión del Tribunal es palpablemente errónea y contraria al mandato legislativo sobre la figura del certiorari y su desarrollo jurisprudencial por más de sesenta años. Es esta nueva rigidez del recurso, que surge del revisionismo histórico esbozado por la opinión del Tribunal, la que tendrá efectos adversos en nuestro ordenamiento procesal.
Adviértase que el razonamiento elaborado por la opinión del Tribunal para revocar tales precedentes pasa totalmente por alto que la segunda vista preliminar no es una apelación de la primera, sino que es una vista independiente, separada y distinta. Es decir, a diferencia del recurso de certiorari, el propósito de la vista preliminar en alzada que contempla la Regla 24(c) de Procedimiento Criminal, supra, no es revisar una cuestión de derecho susci *947 tada en la vista inicial, sino pasar juicio nuevamente sobre los hechos del caso. Pueblo v. Cruz Justiniano, supra, pág. 30; Pueblo v. Tribunal Superior, 96 D.P.R. 237 (1968). Ante ese supuesto, no encontramos razón alguna por la cual el Ministerio Público deba esperar a celebrar una vista preliminar en alzada, para que se adjudiquen nuevamente los hechos, antes de solicitar la revisión del asunto novel de derecho sobre la figura de la comisión por omisión y la cooperación presentado tanto aquí como en Pueblo v. Sustache Sustache, supra. Es decir, la controversia de este recurso versa sobre un asunto de estricto derecho que no requiere una nueva adjudicación de los hechos en otra etapa procesal para atenderla.
A base del tecnicismo procesal invocado por la mayoría, el cual le requiere al Ministerio Público agotar el recurso de la vista en alzada aunque la controversia imperante sea esencialmente sobre una figura nueva y compleja en nuestro ordenamiento jurídico penal, se le impone una carga onerosa al Estado para llevar los casos ante los tribunales del país. Sin duda alguna, dicha redundancia procesal no constituye el mecanismo ordinario eficaz y rápido al que se refiere la doctrina moderna del certiorari para limitar la discreción de los foros apelativos. Pérez v. Tribunal de Distrito, supra. Ello se torna más evidente aún al tomar en consideración que los hechos adjudicados por el Tribunal de Primera Instancia en la vista preliminar original celebrada contra Díaz De León eran más que suficientes para atender y dilucidar el asunto de estricto derecho que esgrimió el Ministerio Público en el controvertido recurso de certiorari. En fin, la realidad táctica y procesal del caso de autos presentaba razones de peso más que suficientes para prescindir de una vista preliminar adicional, que sería claramente innecesaria.
Por último, resulta sumamente ilustrativo y pertinente a este caso recordar las expresiones de este Tribunal hace más de sesenta años en Pérez v. Tribunal de Distrito, supra, cuando se le confirió al recurso de certiorari los con *948 tornos modernos que hoy el Tribunal deja sin efecto. En particular, afirmamos que al resolver que
... tenemos que echar a un lado los casos que han inyectado en la ley restricciones que no aparecen de su texto, no estamos “legislando judicialmente”. Por el contrario, quitar los grilletes que encadenaban el estatuto y con ello restituirle su forma prístina, si algo hace es dejar sin efecto anterior “legislación judicial” de este Tribunal. (Énfasis suplido.) Pérez v. Tribunal de Distrito, supra, pág. 19.
A pesar de estos pronunciamientos que emitimos hace más de medio siglo, este Tribunal ahora decide dar marcha atrás y revisar por fíat judicial el desarrollo autóctono del recurso de certiorari en nuestra jurisdicción, con el único fin de imponer grilletes a esta figura procesal y limitar el acceso de una parte a los tribunales apelativos, en este caso, el Ministerio Público. Sin duda, estamos ante la misma concepción formalista que produjo la reciente decisión en Crespo Quiñones v. Santiago Velázquez, 176 D.P.R. 408 (2009), en la cual se invocó un “mandato legislativo” inexistente para privar a este Tribunal de su autoridad para resolver los casos de la forma más eficiente y eficaz posible. Es evidente que con semejante proceder no podemos estar de acuerdo.
V
Dado que hubiésemos atendido la controversia de derecho presentada por el Ministerio Público ante el Tribunal de Apelaciones mediante su recurso de certiorari, exponemos brevemente nuestro criterio al respecto. Dicho razonamiento, claro está, lo elaboramos conforme a la normativa que pautamos hace unas semanas en Pueblo v. Sustache Sustache, supra.
En este caso, la prueba desfilada en la vista preliminar apunta a que el deber jurídico que le imponía a Díaz De León la obligación de actuar afirmativamente en protección de los derechos civiles de la ciudadanía se activó una vez Pagán Cruz comenzó a agredir al señor Cáceres Cruz *949 mientras intentaba arrestarlo sin causa aparente, con la anuencia y participación previa de ésta y de Sustache Sustache. De hecho, del expediente surge que Díaz De León fue quien inició el intento de arrestar al señor Cáceres Cruz, y cuando se le inquirió sobre el motivo del arresto, contestó “porque lo voy a arrestar”. Véase Apéndice de la Petición de certiorari, pág. 182.
Asimismo, del testimonio del agente investigador en la referida vista preliminar se deduce que la detención inicial comenzó cuando Díaz De León escuchó desde el vehículo de la Policía que el señor Cáceres Cruz expresó “siempre la misma mierda con los cabrones guardia [sic]”. En vista de ello, Díaz De León le indicó a su compañero, Pagán Cruz, “que [le] están faltando el respeto [sic] que los trata de mierda y de cabrones”. Apéndice, pág. 309. A su vez, la prueba presentada apunta a que ésta nada hizo para impedir los actos que desembocaron en la muerte del señor Cáceres Cruz.
En atención a esos sucesos fácticos, es evidente que tanto Díaz De León como el agente Sustache Sustache tenían el mismo deber de intervenir con Pagán Cruz para impedir y evitar el uso de la fuerza excesiva que finalmente resultó en la muerte del señor Cáceres Cruz. Dicha conclusión es inevitable al tomar en consideración el derecho pautado con relación a Sustache Sustache a base de los mismos hechos en Pueblo v. Sustache Sustache, supra. La prueba presentada en la vista preliminar parece indicar que esta agresión ocurrió frente a ambos, quienes observaron los sucesos y decidieron deliberadamente no intervenir para detener a su compañero, aun cuando éste estaba violando los derechos civiles de un ciudadano.
Por consiguiente, la prueba desfilada hasta el momento contra Díaz De León tiende a indicar que la agresión y muerte del señor Cáceres Cruz configuró un delito cuya comisión aparentemente fue auxiliada por el incumplimiento con su deber de garante como miembro de la Policía. En su posición de garante frente a la ciudadanía allí reunida, Díaz De León —al igual que Sustache Susta *950 che— tenía la responsabilidad clara de auxiliar a la víctima. Según nuestro análisis en Pueblo v. Sustache Sustache, supra, todo esto es suficiente para determinar que existía causa probable para acusarla por el delito de asesinato en primer grado y por el delito menor incluido de agresión al amparo de las figuras del cooperador y de la comisión por omisión incorporadas a nuestro ordenamiento con la aprobación del Código Penal de 2004.
En fin, no podemos unirnos a la opinión del Tribunal en el caso de epígrafe. Ésta no tan sólo revoca una norma clara de nuestro derecho procesal penal, sino que ordena la celebración de otra vista preliminar innecesaria en detrimento de la economía procesal en este caso. Además, y en el proceso de revisar los criterios para expedir un auto de certiorari, el Tribunal legisla desde este estrado apelativo un nuevo requisito jurisdiccional y perpetra un retroceso histórico en la evolución de esa figura rígida y anticuada que ya habíamos superado hace más de medio siglo.
En vista de que el proceso apelativo seguido en este caso se realizó conforme al ordenamiento procesal vigente y dentro de los parámetros de discreción que circunscriben el recurso de certiorari, hubiésemos confirmado la sentencia recurrida del mismo modo que lo hicimos en Pueblo v. Sustache Sustache, supra.
Por todo lo anterior, disentimos respetuosamente del curso de acción seguido por la mayoría.
VI
A modo de epílogo, una reflexión. En momentos en los que la sociedad puertorriqueña sufre el embate de una despiadada ola criminal, poco bien haríamos si en vez de interpretar nuestras leyes en armonía con el contexto social en el que vivimos, le damos la espalda a esa realidad para adoptar normas que son el producto de un mero ritualismo procesal.
A nuestro juicio, ese es precisamente el error de la opinión que emite el Tribunal en el caso ante nuestra *951 consideración. En su afán por pautar lo que, a su entender, constituye el derecho correcto sobre la utilización del recurso de certiorari en Puerto Rico, el Tribunal le quita al Ministerio Público una herramienta de acceso directo a los foros apelativos para cuestionar los errores de derecho que se hayan cometido en una determinación de no causa probable en la vista preliminar.
Como Jueces, debemos ser conscientes de que todas nuestras decisiones tienen consecuencias, no sólo para las partes, sino para la sociedad misma en la que nos desenvolvemos. Esta decisión tiene el efecto de prolongar más los litigios en los tribunales y, lamentablemente, de extender la espera de todos los que aguardan por que se haga justicia. Si consideramos que los hechos objeto de este caso ocurrieron el 11 de agosto de 2007, y que la vista preliminar contra Díaz De León se celebró el 28 de agosto de 2007, la opinión del Tribunal no tiene otro significado que convertir dos años de trámite judicial en tiempo perdido.
Afortunadamente, el error que comete la mayoría puede remediarse legislativamente. Confiemos, pues, en que próximamente se restablezca la disponibilidad del recurso de certiorari para revisar determinaciones de no causa probable, sin importar la etapa procesal en la que se encuentre el caso. Así se le devuelve a nuestro ordenamiento procesal una herramienta que por décadas le ha servido bien a la Justicia en Puerto Rico.

 De hecho, se deduce claramente de la resolución emitida por el Tribunal de Primera Instancia (Bermúdez Torres, Juez) que no se encontró causa para acusar a Díaz De León precisamente por una interpretación de derecho. En particular, el juez de instancia hizo referencia al conocimiento necesario que debe tener un imputado para que responda a título de cooperador. Véase Transcripción de la Vista de Causa Probable para Acusar, 10 y 11 de septiembre de 2007, Apéndice de la Petición de certiorari, págs. 481-489.

 Adviértase que tras determinar no causa contra Díaz De León en la vista preliminar, el juez Bermúdez Torres le expresó al Ministerio Público que podía acudir al Tribunal de Apelaciones mediante un certiorari antes de que se realizara una vista preliminar en alzada, pues la controversia era de estricto derecho y, a su en-tender, las figuras ante su consideración se debían “comenzar a definir”. Por ende, pautó la vista preliminar en alzada sujeto a que el fiscal decidiera recurrir al tribunal apelativo con un recurso de certiorari. Véase Transcripción, supra, Apéndice de la Petición de certiorari, pág. 487.

 Véanse, además: D. Rivé Rivera, Recursos Extraordinarios, 2da ed. rev., San Juan, Programa de Educación Jurídica Continua de la Universidad Interamericana de Puerto Rico, 1996, págs. 201-203; H. Sánchez Martínez, Práctica jurídica de Puerto Rico: derecho procesal apelativo, San Juan, Ed. Lexis-Nexis, 2001, See. 1801.

 De hecho, la realidad es que las limitaciones inflexibles y rigurosas que aún caracterizan a estos dos recursos extraordinarios no tienen equivalencia funcional alguna en las leyes relacionadas con el certiorari. A diferencia del certiorari, los criterios rígidos del injunction que exigen al peticionario que demuestre un daño irreparable o que carece de un remedio adecuado en ley surgen de la propia ley y no de la equidad. 32 L.P.R.A. secs. 3523(2) y 3523(4); Asoc. Vec. V. Caparra v. Asoc. Fom. Educ., 173 D.P.R. 304 (2008).

 Específicamente, el Art. 4.006 de la Ley de la Judicatura del Estado Libre Asociado de Puerto Rico de 2003 (Ley de la Judicatura de 2003) dispone que el Tribunal de Apelaciones podrá entender “[m]ediante auto de certiorari expedido a su discreción, de cualquier resolución u orden dictada por el Tribunal de Primera Instancia”. 4 L.P.R.A. sec. 24y(b).

 En ese caso expresamos que “[n]o hay razón alguna de peso por la cual deba negársele al Tribunal Superior el ejercicio de ese poder, sujeto, naturalmente, a la autoridad revisora nuestra”. Pueblo v. Tribl. Superior, 81 D.P.R. 763, 775 (1960).

 Según el desarrollo liberal del recurso de certiorari en la segunda mitad del siglo XX, explicamos en Pueblo v. Cruz Justiniano, 116 D.P.R. 28 (1984), que la determinación de no causa en Pueblo v. Tribunal Superior, 95 D.P.R. 412 (1967), no fue revisable porque el Ministerio Público no planteó en ese caso algún asunto de derecho, sino que solicitó una revisión en torno a los hechos ya adjudicados. Por otro lado, en Pueblo v. Opio Opio, 104 D.P.R. 165 (1975), revocamos a. Pueblo v. Tribunal Superior, supra, en la medida en que caracterizaba al magistrado en la vista de causa como una parte interesada.

 Véanse, además: E.L. Chiesa Aponte, Derecho procesal penal de Puerto Rico y Estados Unidos, Colombia, Ed. Forum, 1995, T. III, págs. 46-47 y 105-106; O. Resumil Ramírez, Práctica jurídica de Puerto Rico: derecho procesal penal, Seos. 6.12 y 15.13.

 En específico, el Tribunal de Apelaciones adujo que, de expedirse el auto, “se desnaturalizaría la naturaleza del recurso de certiorari al obviarse un procedimiento rápido y efectivo dispuesto por ley: la vista en alzada que contempla la Regla 24(c) de Procedimiento Criminal, supra”. Pueblo v. Aponte Nolasco, Caso Núm. KLCE200400775, resuelto el 7 de julio de 2004.